THE MOUNT PLEASANT CEMETERY COMPANY OF NEWARK, PLAINTIFF IN ERROR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK, DEFENDANTS IN ERROR.

A stipulation in a cemetery company's charter, that no assessment should be imposed on the burial ground until the board of freeholders of the county should order otherwise—*Held* to be obligatory and valid.

On error to the Supreme Court.

For the plaintiff in error, *Theodore Runyon.*

For the defendants in error, *Joseph Coult.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    The solution of the question involved in this controversy appears to depend rather on the ascertainment of a fact, than on the settlement of any matter of law.

The inquiry is, whether or not an assessment upon the burying ground of the plaintiff in error, by virtue of proceedings to widen one of the streets in Newark, is legal.

This tax the cemetery company resists, on the ground that it is entitled to exemptions from such burthens by force of the sixth section of its charter, which enacts, " that the premises, burial lots, vaults, monuments and other erections and fixtures of said cemetery, shall not be subject to any assessments, taxes or fines, unless otherwise ordered by the board of chosen freeholders of the county of Essex." This charter was created by an act approved 24th January, 1844, and consequently, so far as affects its conventional qualities, is irrepealable by legislation.

On the 4th April, 1873 (*Pamph. L.*, *p.* 629), a statute was passed authorizing the " assessment for street openings and all other local improvements in the city of Newark " of this cemetery company, and other corporate property. It is not denied that this act empowers the city to lay the assessment now in question, if such thing can be effected, in any mode, by legislative action.

That a charter of this kind constitutes a contract between the state and the corporation has not been, and could not be, denied.    Since the decision of the Dartmouth College Case, there has been no doubt upon that subject; nor has it been, nor can it be, any more in doubt, that by force of the pertiment provision of the constitution of the United States such

contract cannot be impaired by the act of the legislature without the consent of the corporators.

What will constitute such an impairment of the charter is thus stated by Judge Cooley in his summary of the doctrine as adjudicated : "Any law," says this accurate writer, "which, enlarges, abridges, or in any manner changes the intention of the parties discoverable in it, necessarily impairs the contract itself, which is but the evidence of that intention. The manner or degree in which this change is effected can in no respect influence this conclusion; for whether the law affect the validity, the construction, the duration, the mode of discharge, or the evidence of the agreement, it impairs the contract, though it may not do so to the same extent in all the supposed cases." *Cooley Tax.* 80.

These legal principles not being in the least degree in debate, but being, of necessity, admitted on all sides, the single inquiry is, whether, among the terms of the agreement embodied in this charter, there is a stipulation to the effect that, under the present condition of affairs, this cemetery shall not be subjected to the assessment now in controversy; and this is the matter of fact alluded to at the outset of these remarks.

After looking into this subject with care, I am constrained to conclude that the agreement on this subject contained in this charter imposes, at the present time, and under existing circumstances, an imperative obligation on the legislature to refrain from laying the assessment under consideration. The language of the charter, as interpreted by me, appears to be plainly expressive of such a purpose. The scheme in hand was to exonerate these burial lots from all ordinary public burthens for a limited time, and such a design was neither improbable nor uncommon, for such immunity, with respect to this species of property, has always been a part of the public polity of the state. By the General Tax law, "grave yards not exceeding ten acres of ground, cemeteries, and all buildings erected thereon," are exempted from its burthens. If, therefore, it had been left somewhat in doubt, by reason of uncertain phraseology, whether there existed a legislative intention to

relieve these lands, temporarily, from the public rates, no inference would have obtained against such intention on the ground of the singularity of such favoritism. But in truth there is, as it is conceived, no vagueness nor uncertainty in the language before us. It does not occur to me that any terms could have been employed that more definitely and clearly express the intention of these contracting parties that the exemption claimed should exist and continue until the happening of a certain event. Its words are, " the premises, burial lots, &c., *shall not be subject* to any assessments, taxes or fines, unless otherwise ordered by the board of chosen freeholders of the county of Essex." In the presence of this explicit and direct declaration, it is certainly difficult to see how a doubt is to be raised on the subject. And I do not perceive that, in the arguments of counsel, any attempt has been made to show that this language is at all obscure; it has not been interpreted or even construed; it has been simply exscinded from the section, and this is the mechanical treatment of the subject to which I cannot assent.

It is true that it is insisted that this exempting clause was a mere legislative gratuity, and does not constitute a part of any contract between the public and the corporation. But the fallacy of this position is obvious, and the cases cited are irrelevant. The decisions relied on are either instances where the language used, the direct opposite of the language before us, did not purport an intention to impose any obligation on the state—such is the case *State* v. *Parker, Receiver*, 3 *Vroom* 426—or where there was a merely *gratuitous* promise from the public to the corporators, as is exemplified in the cited case of the *Rector of Christ Church* v. *County of Philadelphia*, 24 *How. (U. S.)* 300. It must certainly be conceded that if an exemption from any public burthen be made as a mere privilege, it may at any time be revoked; such a concession would be purely *nudum pactum*, and as such would not be legally binding.

But how is such a doctrine as this applicable to the case in hand? Here we have this legislative promise of exemption.

set forth in the original charter of this company; it was made while the matter was *in fieri*, and it was obviously an inducement to the corporators to accept the charter and incur the expenditures incident to the enterprise, and on the other side, the legislature had for its consideration the expectation of the benefits that might result from such expenditure. Such a situation has always, so far as has been observed, been held to place the public and the members of the corporation in the attitude of contracting parties; it does not seem to be possible to treat the question as an open one.

Another objection has been intimated, and that is, that by force of the clause in question, there has been a delegation of the power to tax this company to the board of chosen freeholders.

It seems very plain that there is in this law no basis for such a theory. The section in plain words does this: it lays a restriction on the power to tax or assess, and declares that the restriction shall continue " until " otherwise ordered " by the board of chosen freeholders," &c. How the power to tax is to be inferred from the power to rescind the limitation of the power of the legislature to tax, is not perceived.

Nor is it observed that there can be any practical difficulty in carrying into effect this agreement between these parties. The corporators were not willing to be taxed at any time at the will of the state, and the latter was not willing to grant a perpetual exemption; and the compromise was, that the right of the state to tax should remain in abeyance until the persons composing the board of freeholders, acting as arbitrators, should declare that the time had come when it was equitable that these lands should bear their share of the public burthens. Such a contract is entirely legal and constitutional, and should be enforced.

Let the judgment be reversed.

*For affirmance*—DIXON, CLEMENT.   **2.**

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, REED, BROWN, COLE, SMITH, WHITAKER.   **8.**