## SOCIETY FOR ESTABLISHING USEFUL MANUFACTURES v. CITY OF PATERSON ET AL.

Submitted July 1, 1915—Decided December 15, 1915.

1. The charter of the Society for Establishing Useful Manufactures (*Pat. L.* 1800, *p.* 104) enacts that "all the lands, tenements, hereditaments, goods and chattels, to the said society belonging, shall be and they are hereby declared to be free and exempt from all taxes, charges and impositions whatsoever, under the authority of this state, whether for state or for county uses, or for any other use whatsoever," and "shall continue in force for the term of ten years only, after which term it shall be lawful to lay such taxes for the use of the state." *Held*, that such charter constitutes an irrepealable contract with the state, and exempts the society from any except a state tax upon such real estate as is held by it for the purposes of its incorporation; and *Held*, further, that the disposing of a surplus product of the society to the Public Service Company is not inconsistent with the charter obligation or limitation of the society.
2. The school tax is not a tax levied under the authority of the state for the use of the state only, but is a tax levied for local purposes.

On *certiorari* removing tax assessments.

Before Justices PARKER, MINTURN and KALISCH.

For the prosecutor, *John B. Humphreys.*

For the defendants, *Edward F. Merrey.*

The opinion of the court was delivered by

MINTURN, J. The taxing authorities in the city of Paterson imposed upon the hydro-power plant of the prosecutor in that city a tax for the year 1914.

The imposition of the tax is resisted by the prosecutor, upon the ground that the property in question is exempt from taxation, under the provisions of its charter as construed by the decisions of this court.

The Society for Establishing Useful Manufactures was incorporated November 22d, 1791, by a special legislative act (*Pat. L.* 1800, *p.* 104), which act after reciting in its preamble that the establishing of the society in this state "will be conducive to the public interest," provided in its fourth section as follows:

' "And the more effectually to encourage so useful and beneficial an establishment, be it further enacted by the authority aforesaid, that all the lands, tenements, hereditaments, goods and chattels, to the said society belonging, shall be and they are hereby declared to be free and exempt from all taxes, charges and impositions whatsoever, under the authority of this state, whether for state or for county uses, or for any other use whatsoever, provided always, that the said exemption shall not be construed to extend to the private or separate property of any member of the said corporation, in his or her individual capacity; and as touching the lands, tenements and hereditaments of the said society, shall continue in force for the term of ten years only, after which term it shall be lawful to lay such taxes, for the use of the state upon the said lands, tenements and hereditaments, as shall be laid upon other lands, tenements and hereditaments of like value, nature or description; provided nevertheless, that in case the said taxes shall be laid by way of assessment, it shall be according to a certain rate per centum, to be prescribed in the law, laying such taxes, of the true and absolute value of the lands, tenements or hereditaments, whereupon the same shall be laid or assessed, and shall not extend directly or indirectly to the moneys, goods or chattels, whether in possession or action, or to the profits, real or supposed of the said society."

This legislation has frequently been the subject of judicial construction, with the uniform result of conceding to the society an exemption from taxation upon such real estate as is held by it for the purpose of its incorporation.

In *State* v. *Flavel et al.* (February term, 1854), 24 *N. J. L.* 370, Chief Justice Green speaking for this court said that "the lands and real estate of the Society for Establishing

Useful Manufactures, are by virtue of the fourth section of their charter exempt from all taxes, except those raised for state purposes. The exemption only extends to such real estate as is held by them for the purpose of their incorporation. It includes their mills, mill lots and water power, but does not include mountain lots, farming lands or building lots."

In four subsequent cases reported in the same volume, *i. e., City of Paterson* v. *Society, &c.,* 24 *N. J. L.* 385; *State* v. *Powers, Id.* 400; *State* v. *Blundell, Id.* 402, and *State* v. *Powers, Id.* 406, this court dealt with the subject of taxation imposed upon the property of the prosecutor, under various contentions, and disposed of the questions there presented in the light of the language of the Chief Justice adverted to, sustaining the exemption.

In the Court of Chancery upon the authority of these adjudications, a like conclusion was reached upon an application for an injunction to restrain the corporation from transacting its business, for non-payment of the state tax imposed by the Tax act of 1884.

In the same court in an earlier case, Chancellor Williamson, in an opinion supplied to the reporter in the case by the late Vice-Chancellor Pitney, reviews the history of the society, and presents an interesting resume of its powers under its charter and the law. *Society* v. *Morris and Essex Canal Co.,* 30 *N. J. Eq.* 145.

In the light of this declared status, the defendant imposed the assessment for taxes upon the hydro-electric power plant, and a steam plant located upon lands of the society which have been in its ownership for many years. These plants are used for generating and distributing electric power for manufacturing purposes to mill owners situated along the banks of the Passaic river.

The insistence of the prosecutor is that under the charter of the society, these properties are exempt from taxation as part of the manufacturing system of the society. We see no escape from the conclusion under the testimony that the power

plants in question are utilized by the society for the purpose of manufacturing electricity, for use by the mill owners along the Passaic river, and with the further purpose in view of disposing of any surplus product to the Public Service Corporation, for its particular uses, until such surplus shall be taken up by the future adaptation of the machinery of other mills to acquiring their motive power electrically, instead of mechanically, the use by the Public Service Company thus gradually diminishing until it shall be entirely eliminated. Such use of the surplus product is not inconsistent with the charter obligation or limitation of the society, because its failure to so employ the surplus power would result in wanton waste of a commercial product, a condition which we must assume was not contemplated by the legislature in prescribing the charter limitations of the society.

That the production of electricity is a species of manufacturing, and therefore within the charter power of the prosecutor, seems to be abundantly supported by judicial decision, wherein kindred questions have presented the inquiry for determination. *People* v. *Wemple,* 129 *N. Y.* 543; *Frederick Co.* v. *Frederick City,* 36 *Atl. Rep.* (*Md.*) 362.

If there were an existing doubt as to the interpretation to be given this term in its application under multiform statutes, in which it is employed in various states, the legislative direction contained in the thirty-seventh section of the charter of the society that "this act shall in all things be construed in the most favorable manner for the said respective corporations," would seem in this instance to relieve the situation of all reasonable doubt.

It is contended, however, that that part of the tax in question representing the school tax is a tax raised for state purposes, and that under *State* v. *Flavel, ubi supra,* the society can claim no exemption against a state tax. The language of that decision adjudged the society to be liable "to taxes under the authority of the state for the use of the state only."

The case of *Riccio* v. *Hoboken,* 69 *N. J. L.* 104, is cited as authority for the contention that the present school tax is

a state tax for state uses only, and that the prosecutor ·is subject to assessment therefor. We do not so interpret that adjudication. If it be at all determinative of the question at bar, the history of school legislation in this state, as outlined by Mr. Justice Dixon in his opinion in the case, would lead to the contrary conclusion, for he states that prior to the constitutional amendments of 1875 nothing can be discovered in our legislative history on the subject of public education, "which does not point to the support and management of common schools in cities, and in other municipalities as a matter more or less of local concern." To this it may be added that since the period referred to, while the state has intervened by legislation, as under the present School act, for the purpose of establishing a uniform system of education and supervising the same in its distribution and operation among the school districts, the collection of the tax and its use was primarily for local purposes.

The manifest object of state intervention was for the purpose of securing uniformity of legislation, and administration in the management and control of school affairs. Therefore, only in the extremely liberal sense that every tax imposed by law is *ex necessitate* a state tax, can the tax in question under our legislative treatment of the subject be so construed.

We think that the act of 1868 (*Pamph. L.* 1868, *p.* 1091), entitled "An act to develop and improve the water power of the Passaic river," even if construed as the prosecutor contends, in nowise militates against the right of exemption claimed by the society under its charter, which in our judgment constitutes an irrepealable contract with the state. *Singer Manufacturing Co.* v. *Heppenheimer,* 58 *N. J. L.* 633; *Hancock (Comptroller)* v. *Singer Manufacturing Co.,* 62 *Id.* 289; *State Board* v. *Morris and Essex R. R. Co.,* 49 *Id.* 193; *Mt. Pleasant Cemetery* v. *Newark,* 52 *Id.* 539.

But aside from that conclusion we find nothing in the case from which we may conclude, as the defendants insist, that the property in question was acquired by the society under that act, and consequently became subject to its provisions

regarding taxation. The act apparently was designed to empower the prosecutor to condemn lands for the purpose of increasing the efficiency of its plant as a manufacturing concern, by enabling the society to dam the river and thereby create ponds and reservoirs for the storage of additional power.

Our examination of the remaining contentions of the defendants leads us to conclude that they are of no moment.

The result is that the assessments and taxes under review must be vacated.