SOCIETY FOR ESTABLISHING USEFUL MANUFACTURES, RESPONDENT, v. CITY OF PATERSON, APPELLANT.

Argued March 14, 1916—Decided July 6, 1916.

1. The taxes required to be raised by the General School law for the support of the free public schools of the state are state taxes levied for the use of the state.
2. Property acquired by the Society for Establishing Useful Manufactures under an act entitled "An act to develop and improve the water power of the Passaic river" (*Pamph. L.* 1868, *p.* 545), is not exempt from local taxation under the provisions of the society's charter. *Pat. L., p.* 104.

On appeal from the judgment of the Supreme Court, whose opinion is reported in 88 *N. J. L.* 123.

For the appellant, *Edward F. Merrey* and *Francis Scott*.

For the respondent, *John B. Humphreys*.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.    The question presented for determination by these proceedings is the validity of certain taxes, assessed upon real estate of the Society for Establishing Useful Manufactures, for the year 1914, by the taxing officials of the city of Paterson. These taxes were laid, partly for city purposes, partly for county purposes and partly for the support of the public schools of the state. The society claims that it is exempt from all such taxation by the provisions of its charter; the Supreme Court upheld this contention, and the city has appealed.

The fourth section of the society's charter, which was granted in 1791 (*Pat. L., p.* 104), provides that the real and personal property of the society shall be free and exempt from all taxes, charges and impositions, whether for state or county uses, or for any other use whatsoever; with a proviso that

the said exemption "as touching the lands, tenements and hereditaments of the said society shall continue in force for the term of ten years only, after which term it shall be lawful to lay such taxes for the use of the state upon the said lands, tenements and hereditaments as shall be laid upon other lands, tenements and hereditaments of like value, nature or description."

So far as the taxes under consideration were imposed for city and county purposes, we concur in the determination of the Supreme Court that they were laid in violation of the provision of the society's charter just quoted, except as is hereinafter indicated; and we have nothing to add by way of reasoning to the exposition of this charter provision by that court in the opinion promulgated by it. We disagree, however, with the conclusion expressed by it that the state school tax is assessed for local, and not for state uses, and is, therefore, not within the proviso of the exemption clause of the charter.

For the purposes of this case (regardless of what, in fact, the situation was) it may be conceded that prior to the amendments of the state constitution in 1875, the establishing and maintaining of free public schools were matters of local, rather than state, concern; that is, were left to the determination of the governing bodies of the several political subdivisions of the state. By those amendments, however, the people declared, among other things, that thereafter *the legislature* should "provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in this state between the ages of five and eighteen years." *Const., art.* 4, § 7, ¶ 6. Pursuant to that mandate the legislature enacted a general school law operative throughout the length and breadth of the state which has ever since, with various amendments and revisions, been in force. For the purpose of maintaining these free public schools a sum of money not less than $100,000 is required to be appropriated annually from the state treasury. In addition to this appropriation a state school tax is re-

quired to be annually assessed "upon the taxable real and personal property in the state as exhibited by the latest abstract of ratables from the several counties, made out by the several boards of assessors, and filed in the office of the state comptroller." The amount of this tax is fixed by legislative mandate, and is such sum as will make, when added to the annual state appropriation, a sum equal to two and three-quarter mills on each dollar of valuation of the taxable real and personal property in the state. This tax is required to be assessed, levied and collected at the same time and in the same manner as local taxes are, and is, when collected, required by the statute to be turned into the state treasury. When the total amount of this state tax is received by the state treasurer, ten per centum is set aside as a reserve fund for the purpose of apportionment by the state board of education, according to its discretion, among the several counties of the state. As to the remaining ninety per cent. the state comptroller is required, upon the order of the state superintendent of public instruction, to remit to each of the county collectors in the state a sum equal to nine-tenths of the money contributed by his county to this state school fund. The moneys so paid to the several county collectors are to be received and held in trust by them, and paid to the custodians of the school moneys of the several school districts of their counties, on the orders of the county superintendent of schools. *Comp. Stat.*, p. 4780-4782.

The argument is that this legislative scheme of taxation exhibits a purpose to raise moneys, not (in the language of the society's charter) "for the use of the state," but for the use of the several school districts of the state; and that such a use is purely local. This argument is rested principally upon two features of the taxing scheme—*first*, the method by which the tax is assessed and collected; *second*, the return of ninety per cent. of it to the various counties from which it was received.

In our opinion the method of assessment and collection throws no light upon the character of this tax. Up to the

time of the enactment of the "Act for the taxation of railroad and canal property," in 1884, and of the "Act to provide for the imposition of state taxes upon certain corporations and for the collection thereof," passed the same year, the expenses incurred in carrying on the state government were met largely by the imposition of an annual state tax, levied upon all of the taxable real and personal property within the territory of the state. The machinery by which that tax was assessed and collected was from the beginning identical with that which is now used for the assessment and collection of the state school tax. A tax which is imposed directly by the legislature upon all the taxable property of the state, the amount of which is declared by that body, and the uses to which it is to be devoted are fixed by it, is a state tax, even though the legislature uses the municipal taxing machinery in the various political subdivisions of the state for its assessment and collection. A local tax is one laid upon property in the locality, by the governing body thereof for an amount fixed by it, and for local governmental uses declared by it. Bearing in mind this distinction we have no doubt that the tax imposed by the legislature for the maintenance and support of our system of free public schools "for the instruction of all the children in this state between the ages of five and eighteen years," is a state and not a local tax.

But it is said that even if the tax be a state, and not a local one, it has not been laid "for the use of the state," within the meaning of that phrase as used in the society's charter. That is to say that, although the tax is laid by the state, it is required to be used for local and not for state purposes. As we have already pointed out, the people of this state, by the amendment to the constitution which we have cited, made the maintenance and support of free public schools a matter of state, instead of local concern. The school tax is laid for the purpose of carrying out this state system of educating our children; it is used for that purpose; and such a use, in our opinion, is as much a state use as the appropriation of moneys to be expended in the support of the

state government is an appropriation for a state use; the distribution by the state of the moneys so raised, in such a way as, in the judgment of the legislature, would best subserve the purpose of the constitutional mandate being a mere matter of administration.

We conclude, therefore, that so much of the tax under review as was assessed for the support of the free public schools of the state, is a valid obligation which the Society for Establishing Useful Manufactures must discharge.

The tax laid for county and municipal purposes, was not, in our opinion, altogether invalid. In 1868 the legislature of this state passed an act entitled "An act to develop and improve the water power of the Passaic river." *Pamph. L.* 1868, *p.* 545. The preamble to that act is as follows: "Whereas the Society for Establishing Useful Manufactures, a company incorporated by the legislature of this state, in order more effectually to carry into effect the objects of their incorporation desire to develop, increase and improve the water power of the Passaic river, and by that means extend and increase manufacturing establishments in the county of Passaic, and it appearing that the public good would be promoted thereby; therefore be it enacted," &c. The body of the act empowered the society to develop, increase and improve the water power of the river above the Great falls, and to create ponds or reservoirs of water therein, and in other streams in the county to be used therewith; and to that end erect dams, and raise and increase the height of any dams theretofore erected in the river to such height as they might deem necessary for the purposes authorized "by this act." The statute also authorized the society to acquire, by purchase or condemnation, all lands which would be flooded by the exercise of the powers just referred to, and then declared (in section 6) that "all real and personal property of said society acquired under this act shall be subject to taxation in the same manner as other real and personal property in the city of Paterson is subject thereto."

It would appear, from the briefs of the counsel both of the state and of the society, that some of the property upon which the taxes in dispute were assessed was acquired by the society under the powers conferred upon it by the act just referred to. The contention of the society is that this property is not taken out of the exemption clause of the original charter by force of the tax provision of the later statute, for the reason that it was acquired by purchase; and that the legislature did not intend that property acquired pursuant to the grant of 1868 should be taxable, unless it was acquired by the exercise of the power of eminent domain. We are told that this is a reasonable construction of the later statute, because (so counsel states) the society could have acquired this property under its original grant, except for the fact that its charter did not confer upon it the power of condemnation. But this statement is based upon a misapprehension of fact; for the seventeenth section of the company's charter confers that power in express terms, although the language used in conferring it is very different from that which has been adopted for the purpose in later days. It appears from the proofs in the cause that some of the property upon which this tax was levied was attempted to be acquired by the society prior to the enactment of the statute of 1868, but that the attempt was unsuccessful for assumed lack of power on the part of the society to compel the owners to part with it. It further appears that it was acquired almost immediately afterwards by purchase, because the owners realized that by this legislation they must part with it to the society either by contract with it, or through the exercise of the power of condemnation. This property, we think, is subject to local as well as to state taxes. Whether the rights and powers thus granted to the society were in fact necessary to enable it to acquire this property is immaterial. It was so considered both by the state and the society; and the latter cannot use the grant for the purpose of such acquisition, and then repudiate the condition attached to it.

How much of the property is within the taxing district of the city of Paterson, and what its value is, are matters which are not before us. They have not yet been determined by the Supreme Court, and must be settled in the first instance by that tribunal. *Sisters of Charity of St. Elizabeth* v. *Cory, Collector*, 73 *N. J. L.* 699.

The judgment under review will be reversed, and the record remitted to the Supreme Court for the purpose of having there determined what proportion of the whole amount of the tax under review was assessed and collected for the support of the free public schools of the state; and how much of it was assessed upon property acquired by the society under the powers conferred upon it by the act of 1868, and the value of that property.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, BLACK, WHITE, TERHUNE, WILLIAMS, TAYLOR, GARDNER, JJ. 11.