THE SOCIETY FOR ESTABLISHING USEFUL MANUFAC-
TURES, A BODY CORPORATE, PROSECUTOR, v. J. H.
THAYER-MARTIN, STATE TAX COMMISSIONER, ET AL.,
RESPONDENTS.

Argued October 3, 1935—Decided March 26, 1936.

Before Justices Trenchard, Heher and Perskie.

For the prosecutor, *Lindabury, Depue & Faulks* (*Josiah Stryker,* of counsel).

For the respondents J. H. Thayer-Martin, state tax commissioner, and William H. Albright, state treasurer, *David T. Wilentz,* attorney-general.

For the respondent city of Paterson, *Charles F. Lynch* and *Charles H. Roemer.*

The opinion of the court was delivered by

Perskie, J. The writ of *certiorari,* in this case, brings up for review an assessment of taxes made upon the gross receipts of the prosecutor, at the rate of five per cent., for the year ending December 31st, 1934. This assessment of $10,521.66 was made by the state tax commissioner pursuant to an act of the legislature entitled, "An act for the taxation of persons, co-partnerships, associations and corporations engaged in the production and sale of hydro-electric power in this state." Chapter 144, *Pamph. L.* 1935, *p.* 357.

The act of 1935 provides, *inter alia,* that (section 1), in addition to all other taxes imposed upon those engaged in the production and sale of hydro-electric power in this state there shall be levied and assessed an annual tax at the rate of five per centum (5%), per annum, upon the gross receipts of all their business in this state for the year ending December 31st, next preceding, and annually thereafter; that (section 5), *all local taxes* assessed and paid for the calendar year commencing with the taxable year of 1935, and each year thereafter, *shall be deducted from and constitute a credit against the tax due from those assessed under the act,"* and the state tax commissioner *shall allow such deduction or credit* upon presentation of satisfactory proof of payment of *all local taxes* and shall certify said deduction or credit

allowed by him to the state treasurer; that (section 6), the taxes so assessed under this act shall be paid to the state treasurer for the general purposes of the state and *shall be credited by him on account of the state tax* assessed against the respective municipalities in which those affected under the act *are assessed for local taxes,* in proportion to the value of the property located in such municipalities  *  *  *.

Prosecutor contends that the state is without authority under the act and proofs herein exhibited, to make the challenged exaction.

In support of that contention, prosecutor summarizes its eleven reasons as follows:

1. That the assessment against the prosecutor and the act under which the assessment was made, if construed so as to authorize such assessment, impair the obligation of the contract between the state and the prosecutor contained in section IV of the prosecutor's charter. This reason is based upon the provisions of the act, the tax exemption contained in prosecutor's charter, article IV, section VII, paragraph 3, of the constitution of this state, and article I, section X, paragraph 1, of the constitution of the United States.

2. The act and the assessment made thereunder deprive the prosecutor of its property without due process of law and deny to it the equal protection of the laws in violation of the fourteenth amendment to the federal constitution, and they take from the prosecutor its property for public purposes without compensation in violation of article I, paragraph 16, of the constitution of this state.

3. That the act is a special act based upon a classification which is entirely illusory and designed to affect the prosecutor alone and to exclude all others from its operation which naturally would fall within its purview, and that no notice was given of the intention to apply therefor and of its general objects as required by article IV, section VII, paragraph 9, of the constitution of this state.

4. The prosecutor also objects that the assessment made under the act was erroneously made upon its entire gross receipts instead of its receipts arising only from the produc-

tion and sale of hydro-electric power. If, however, the reasons first above mentioned are sustained, there will be no occasion for the consideration of this question.

It is contended for the city of Paterson that the challenged act does not impair the society's contract; that an ambiguity arises by reason of the concluding and hereinafter underscored portion of section IV of prosecutor's charter; that the act does not discriminate against prosecutor, and is not special legislation.

The state officials, who are parties here, although represented by the attorney-general, take no position for or against the act. More will be said about this later.

Let us, in the words of Mr. Justice Roberts, for the Supreme Court of the United States, in *Nebbia* v. *New York,* 291 *U. S.* 502; 78 *L. Ed.* 940, 944, "first inquire into the legislation here involved and its history."

Prosecutor is one of the oldest corporations in this state. It was chartered by an act of legislature entitled "An act to incorporate the contributors to the Society for Establishing Useful Manufactures and for the encouragement of the said society," passed November 22d, 1791. The broad powers conferred upon the society and the contractual obligations thus created between the state and the society, have been the subject-matter of judicial consideration and determination, by the courts of our state, on numerous occasions. To those interested in its historical background, made part hereof by concession of counsel of respective parties, reference is again made to the decision of Chancellor Williamson, in the case of Society for Establishing Useful Manufactures *v.* Morris Canal and Banking Co., which is to be found in the reporter's note to the case of *Lehigh Valley Railroad Co.* v. *The Society for Establishing Useful Manufactures,* 30 *N. J. Eq.* 145. Section IV of prosecutor's charter provides:

"And the more effectually to encourage so useful and beneficial an establishment; be it further enacted by the authority aforesaid, that all the lands, tenements, hereditaments, goods and chattels, to the said society belonging, shall be, and they are hereby declared to be free and exempt, from all taxes,

charges and impositions whatsoever, under the authority of this state, whether for state or for county uses, or for any other use whatsoever, provided always, that the said exemption shall not be construed to extend to the private or separate property of any member of the said corporation, in his or her individual capacity; and as touching the lands, tenements, and hereditaments of the said society, shall continue in force for the term of ten years only, after which term it shall be lawful to lay such taxes, for the use of the state upon the said lands, tenements and hereditaments, as shall be laid upon other lands, tenements and hereditaments of like value, nature or description; provided nevertheless, that in case the said taxes shall be laid by way of assessment, it shall be according to a certain rate percentum, to be prescribed in the law, laying such taxes, of the true and absolute value of the lands, tenements, or hereditaments, whereupon the same shall be laid or assessed, *and shall not extend directly or indirectly to the moneys, goods, or chattels, whether in possession or action, or to the profits, real or supposed,* of the said society."

*First:* This section has been construed in may cases by our courts: *State* v. *Flavell* (*S. C.,* 1854), 24 *N. J. L.* 370; *City of Paterson* v. *Society for Establishing Useful Manufactures* (*S. C.,* 1854), *Id.* 385; *State* v. *Powers* (*S. C.,* 1854), *Id.* 400, and *Id.* 406; *State* v. *Blundell* (*S. C.,* 1854), *Id.* 402; *State* v. *Society for Establishing Useful Manufactues* (*Ch.,* 1887), 43 *N. J. Eq.* 410; *Society* v. *Paterson* (*S. C.,* 1915), 88 *N. J. L.* 123; 96 *Atl. Rep.* 92, affirmed in part and reversed in part, 89 *N. J. L.* 208. The uniform result has been that the society was held to be entitled to exemption from taxation upon such real estate as is held by it, for the purpose of its incorporation; that this exemption excludes all taxes, charges, impositions, of any kind or character, for local purposes as distinguished from state purposes; that it also exempts the prosecutor from any taxes imposed for state purposes, except such taxes on its real property as are imposed upon other similar real property.

We think that there is no ambiguity arising under that portion of prosecutor's charter which provides that the tax

"shall not extend directly or indirectly to the moneys, goods or chattels, whether in possession of action, or to profits real or supposed of the said society." We are clear that this provision specifically excludes a tax on prosecutor's tangible or intangible personal property for any use. If it were otherwise its contractual exemption would be rendered nugatory. See *Singer Manufacturing Co.* v. *Heppenheimer (E. and A.)*, 58 *N. J. L.* 633; 34 *Atl. Rep.* 1061; *Hancock, Comptroller,* v. *Singer Manufacturing Co.*, 62 *N. J. L.* 289; 41 *Atl. Rep.* 846.

*Second:* Conceding that prosecutor's contract with the state is irrepealable (*Society* v. *Paterson* (*S. C.*), *supra*—at *p.* 123), can, however, the exaction here be sustained on the basis that it is imposed for state and not for local purposes?

In determining that question we must bear in mind that section XXXVII of prosecutor's charter provides:

"That this act shall *in all things* be construed in the most favorable manner for the said respective corporations."

In the case of *Society for Establishing, &c.*, v. *Paterson*, 89 *N. J. L.* 208; 98 *Atl. Rep.* 440, the Court of Errors and Appeals, by Chief Justice Gummere, held (at *p.* 210) : "In our opinion the method of assessment and collection throws no light upon the character of this tax." And further held (at *p.* 211) : "* * * *A tax* which is imposed directly by the legislature upon all the taxable property of the state, the amount of which is declared by that body, and the uses to which it is to be devoted are fixed by it, is a state tax, even though the legislature uses the municipal taxing machinery in the various political subdivisions of the state for its assessment and collection. *A local tax* is one laid upon property in the locality, by the governing body thereof for an amount fixed by it, and for local government use declared by it. * * *."

We must, therefore, determine the true nature and effect of the act; what does it, in fact, accomplish? In the case of *Macallon Co.* v. *Massachusetts*, 279 *U. S.* 620; 73 *L. Ed.* 874 (at *p.* 879), the United States Supreme Court, by Mr. Justice Sutherland, held:

"The words of the act and the opinion of the state court as to the nature of the tax are to be given consideration and weight; but they are not conclusive. *As it many times has been decided, neither state courts nor legislatures, by giving the tax a particular name, or by using some form of words, can take away our duty to consider its nature and effect. Choctaw O. and G. R. Co.* v. *Harrison,* 235 *U. S.* 292, 298; 59 *L. Ed.* 234, 237; 35 *Sup. Ct. Rep.* 27; *Galveston H. and S. A. R. Co.* v. *Texas,* 210 *U. S.* 217, 227; 52 *L. Ed.* 1031, 1037; 28 *Sup. Ct. Rep.* 638. And this court must determine for itself by independent inquiry whether the tax here is what, in form and by the decision of the state court, it is declared to be, namely, an excise tax on the privilege of doing business, or, under the guise of that designation, is in substance and reality a tax on the income derived from tax-exempt securities. If, by varying the form—that is to say, if, by using one name for a tax instead of another, or imposing a tax in terms upon one subject when another is in reality aimed at—the substance and effect of the imposition may be changed, constitutional limitations upon powers of taxation would come to naught. The rule is otherwise  *  *  *."

The same justice very forcefully observes (73 *L. Ed.* 880), that courts:

"*  *  *  should be acute to distinguish between an exaction which is in substance and reality what it pretends to be, and a scheme to lay a tax upon a non-taxable subject by a deceptive use of words. The fact that a tax ostensibly laid upon a taxable subject is to be measured by the value of a non-taxable subject at once suggests the probability that it was the latter rather than the former that the lawmaker sought to reach. If inquiry discloses persuasive grounds for the conclusion that such is the real purpose and effect of the legislation, the tax cannot be upheld without subverting the well-established rule that 'what cannot be done directly because of constitutional restriction cannot be accomplished indirectly by legislation which accomplishes the same result.  *  *  *  Constitutional provisions, whether operating by way of grant or limitation, are to be enforced according to

their letter and spirit, and cannot be evaded by any legislation which, though not in terms trespassing on the letter, yet in substance and effect destroy the grant or limitation.' *Fairbank* v. *United States,* 181 *U. S.* 283, 294, 300; 45 *L. Ed.* 862, 867, 869; 21 *Sup. Ct. Rep.* 648; 15 *Am. Crim. Rep.* 135."

Our Court of Errors and Appeals in the case of *Singer Manufacturing Co.* v. *Heppenheimer, supra* (the charter exempting corporation or its property from taxation held to also exempt shares of its stock), said (at *p.* 638) : "The state pledged exemption, not from tax only but from any imposition whatsoever." This is precisely the exemption contained in prosecutor's charter. And the court said (same page), "the word 'imposition' includes every kind of enforced contribution to the public treasury." And (on *p.* 639) the court continues :

"The imposition of this tax upon so much of the ten millions of capital stock of the company as is not represented by property in this state, is in its effect as much an impost on property out of this state as if it was directly put upon property itself and not upon the capital which stands for it. *It is an attempt to do by indirection what it is agreed in the contract shall not be done. The fact that it is styled a franchise tax cannot validate it. It is none the less an interdicted imposition because it is given a new name."*

To like effect is *Hancock, Comptroller,* v. *Singer Manufacturing Co., supra.*

*Third:* Does the city of Paterson, which has been persistently but unsuccessfully seeking to impose taxes upon the prosecutor almost from its very beginning, contrary to its contract of exemption with the state under its charter, seek, under the act, to accomplish indirectly that which it cannot accomplish directly?

Let us recur to the proofs and stipulated facts. They disclose, and it is not controverted, that prosecutor owns property in Paterson of the assessed value of $1,380,995 which is exempt under its charter; it also owns property of the assessed value of $76,820 in the city, which it acquired under

*Pamph. L.* 1868, *p.* 545, and is, therefore, not exempt. The tax thereon for 1935 was $2,673.23. It further appears that the gross receipts for the year ending December 31st, 1934, were $210,433.10 of which $104,946.76 was derived from production and sale of electric power produced by steam and other sources.

The tax on the total gross receipts at five per cent. equals the amount first stated as here involved—$10,541.66. The city of Paterson (paragraph 6 of stipulation), pays school taxes, and soldiers' bonus taxes to the State of New Jersey, which taxes for the year 1935 amount to $483,388.62.

It further appears that the only other company in this state engaged in the production and sale of hydro-electric power is the Jersey Central Power and Light Company. The gross receipts of that company from its sale of electric power for the year ending December 31st, 1934, was $7,399,271.34; its gross receipts for the same period from the sale of hydro-electric power were but $13,377.84. This company owns the property in the borough of Pompton Lakes, where its hydro-electric plant is located and it is assessed for $29,400; the tax thereon is $952.26.

It is clear that under the act of 1935, that since the sum equal to five per cent. of the gross receipts for the hydro-electric power sold by the Jersey Central Power and Light Company is less than the amount of taxes it will be obliged to pay on its property in the borough of Pompton Lakes for the year of 1935, it will be entitled to a credit under the gross receipt tax assessed against it an amount in excess of the amount of such tax, and, as pointed out, will not be required to make payment thereunder. But, it is argued, that situation may not always continue so to be. The answer to that argument, of course, is that we treat only of existing facts and issues as and when properly raised and presented.

It is. therefore, apparent that the sole objective sought to be reached was to tax the prosecutor. And we think that prosecutor correctly and unanswerably shows that if it were to pay the tax here exacted of $10,521.66 (receiving no deduction by virtue of its non-payment of local taxes), that the

city of Paterson alone would benefit thereby; and, the state would receive just that much less from the city of Paterson. The state is merely the conduit through which the tax, when imposed and collected, flows into the treasury of the city of Paterson, for its local purposes. If the tax were in fact imposed for state purposes there would be no purpose in deducting the ordinary property tax paid for local purposes.

Prosecutor alone is affected. The appearance of Mr. David T. Wilentz is entered as of counsel for the state tax commissioner and the state treasurer. No brief was filed nor was any argument made for either by the attorney-general. This observation is made not by way of criticism but rather to mark the fact and to observe that it points in the direction of indicating rather persuasively that the state is not concerned in the result of this litigation. Counsel for the city of Paterson alone assumed the laboring oar of sustaining the validity of the challenged act. The reason is obvious. The city of Paterson alone is interested or concerned in the result. And, lest there be any doubt about it, we are reminded that, on the oral argument of this cause, counsel of respondent frankly and properly conceded that the city of Paterson alone was the true party in interest here.

*Fourth:* Does the act discriminate against prosecutor?

The gross receipts of every gas and electric light, heat and power company, not specifically exempt, are taxable. Chapter 195, *Pamph. L.* 1900, *p.* 502; chapter 17, *Pamph. L.* 1917, *p.* 42; chapter 25, *Pamph. L.* 1919, *p.* 49. Obviously, prosecutor was not, by reason of its contract with the state, subject to taxation under these acts.

Nor can it be lawfully taxed under the act of 1935. We agree, for the reasons urged by prosecutor, that the act does unlawfully discriminate against prosecutor.

1. It imposes a tax upon prosecutor only.

2. It imposes a tax upon companies producing electricity by water power and selling it, which is not imposed upon companies producing electricity by steam power or other means, although such electricity may be sold in the same manner and for the same purpose.

3. It imposes a tax upon the use of water power for the production of electricity which is not imposed on the use of water power for any other purpose.

4. It imposes a tax not only on prosecutor's receipts from the production and sale of hydro-electric power but upon its receipts from all other sources, including its receipts from the production and sale of electricity generated by steam power.

5. The tax imposed upon prosecutor's gross receipts is imposed solely because prosecutor's property is exempt from local taxation.

It is finally argued for the city that to place the construction on the act urged by prosecutor "would render the state impotent * * *." And the argument continues in this vein: "Assuredly the society is not above the state;" "the creature of the state has not become its master;" to characterize the act in question, it is said, as a transparent effort on the part of the legislature to evade the state's contract "is to malign the legislature and the governor who signed the bill." Such argument is neither proper nor helpful. It has no place in the case.

The valid contract of no person can legally be brushed aside as a mere worthless scrap of paper. And still less will this court brush aside an irrepealable contract where, as here, the state itself is one of the parties thereto. To do so would be in direct defiance of the federal and state constitutional inhibitions hereinbefore discussed.

What we have said disposes of the major questions raised and argued and makes it unnecessary to discuss any of the other questions raised.

The challenged assessment of taxes is set aside, with costs against the city of Paterson.