DAVID T. WILENTZ, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, INFORMANT, v. THE SOCIETY FOR ESTABLISHING USEFUL MANUFACTURES, A CORPORATION, RESPONDENT.

Argued October 7, 1936—Decided February 13, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the informant, *David T. Wilentz,* attorney-general (*Charles H. Roemer,* of counsel).

For the respondent, *Lindabury, Depue & Faulks* (*Josiah Stryker* and *John Milton,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. The question requiring decision in this cause is whether respondent who has since 1796 abandoned direct manufacture of commodities, theretofore manufactured by it, other than electricity and steam, has so violated the provisions of its charter as to justify the forfeiture thereof, or, as more specifically urged for informant, that there should be, under the proofs here exhibited, a judgment of ouster to the extent of exscinding the perpetual exemptions from taxation now enjoyed by respondent, under its charter with the state, in the city of Paterson and county of Passaic.

The facts are stipulated. It is the legal efficacy only of the facts that is in dispute. In this stipulation is set forth, among other things, the early history of the respondent (hereafter referred to as the Society), its powers under its charter and the law, as they appear in the opinion of Chancellor Williamson in the equity case of the Society *v.* The Morris Canal and Banking Corporation, in which the Society filed a bill for the purpose of establishing its right to all the waters of the Passaic river, at Paterson, and to restrain defendant, &c., from in anywise diverting any of the waters of the said river, &c. This case is reported in the foot note to the case of *Lehigh Valley Railroad Co.* v. *Society, &c.,* 30 *N. J. Eq.* 145.

It will, we think, serve no useful purpose to detail, in chronological order, each of the many steps which the Society thereafter took in the prosecution of its corporate affairs. Suffice it to say, and it is not disputed, it is, in fact, conceded, that, save as to the manufacture of electricity and steam, the

Society has not engaged in the direct manufacture of commodities since 1796; that since 1796 the Society's *modus operandi* has been confined principally to the manufacture of power, as indicated, and to the leasing out of sites and water privileges to others operating manufacturing establishments instead of manufacturing itself as it did prior to 1796.

It may not be out of place to observe that the facts stipulated tend to indicate that the Society has, in pursuance of the growth of population, development and increase of industry, and more convenient living facilities, fully supplied the demands made upon it for leasing manufacturing sites and supplying power generated by it. It has, for example, constructed a modern hydroelectric plant on its lands at Great Falls for the generation of electricity which it supplies to its tenants, lessees, and other manufacturers for power purposes in lieu of the water which it had previously supplied them for such purposes. It has also constructed a modern plant for the generation of electric current by steam power to augment the supply of its hydroelectric plant which is unable at times because of the insufficient water power to supply the demands for electric current to its lessees and other customers. This latter plant is also used for the generation of steam and the sale and distribution thereof to mill owners, and manufacturers for industrial and heating purposes.

The stipulation further discloses that the Society does sell its surplus power, generated during the periods when the supply of water is abundant, and for which it has no storage facilities, to the Public Service Electric and Gas Company; that the Society still owns practically all of the lands which it originally acquired; that it has at all times continued to improve its works in the Passaic river at or near the Great Falls; that it has by reason of its improved modern facilities continuously made the water power thereby developed available for the use of manufacturers located adjacent to its canals; that it has permitted certain municipalities in the vicinity of its operations to secure, upon the payment of damages to it for so doing, water supply from its water shed above the Great Falls of the Passaic river.

But enough as to the facts. For, if we understand the contentions of counsel for informant aright, and we think we do, it is that, conceding the truth of all the stipulated facts, these facts conclusively evince a record of "flagrant misuser, non-user and diversion   *   *   *" by the Society of its corporate power and that, therefore, its charter should be forfeited, or, stated otherwise, that the Society has been and continues to be, guilty of such vulnerable conduct as to justify a judgment of ouster against it to the extent, at least, of exscinding the immunity or freedom of taxation which it now enjoys in the city of Paterson and the county of Passaic by virtue of its contract with the state.

Summarized, informant's contention is based on four (4) grounds. (1) That direct manufacturing as originally contemplated by the Society is a *sine qua non* to its right to exemption from local and county taxation. That the Society is not so engaged and has not been so engaged for over one hundred and forty years, and has no intention of ever becoming so engaged. (2) That the tax exemption is in derogation of the common right and therefore should be strictly construed. (3) That the state has the right to revoke the Society's charter. (4) That paragraph XXXVII of the Society's charter does not preclude the right of the state in this proceeding.

The Society answers that its discontinuance of direct manufacturing was not and is not in violation of the provisions of its charter; that it has performed all its charter obligations; that it has accomplished the great purposes for which it was organized and that as a result of its activities in developing the water power of the Passaic river and making such power available for industry the Society has been the instrumentality by which useful manufactures have been introduced and established in this state; (2) that even if the Society has violated its charter, such violation does not threaten substantial injury to the public; (3) that the legislature by its action waived the right to demand a forfeiture, and (4) that to grant the relief sought would be to impair the Society's contract with the state and deprive it of its

property without due process in violation of both the federal and state constitutions.

It is true that this is the first direct attack by the state against the right of the Society to further enjoy the fruits of its irrepealable contract with the state. *Society, &c., Manufactures* v. *Thayer-Martin,* 116 *N. J. L.* 257; 184 *Atl. Rep.* 219, and cases therein cited. But, it is also true that there is a marked sameness to the reasons here urged by informant. They appear to be predicated upon grounds characteristic of those heretofore repeatedly urged by the city of Paterson in its many unsuccessful efforts to set aside the Society's irrepealable contract with the state. They are, in fact, almost identical in phraseology and substance. They differ only in the manner in which they are raised and presented. Their real objective is the same.

We find nothing new or novel in this application. As indicated, the grounds now urged for informant, are, in substance, those which were urged in the Chancery suit of the Society *v.* Morris Canal and Banking Co. These grounds were rejected by Chancellor Williamson in 1829. They were again urged in 1854 in the case of *State* v. *Flavell,* 24 *N. J. L.* 370, 381, and the Supreme Court, opinion by Chief Justice Green, again rejected them and fully concurred in the views and adopted the conclusions of Chancellor Williamson. True it is that in each of the cited cases the grounds here urged were raised collaterally only, but a careful reading of the opinion in each case clearly demonstrates that the attack on the Society's right to prevent water diversion, its right to exemption from local and county taxes, were predicated on the premise that the Society had forfeited its rights and immunities under its charter because it no longer directly engaged in manufacturing as it did prior to 1796. Since the decisions in 1829 and 1854, as aforesaid, the Society has continued to exercise its corporate powers in substantially the same fashion. It, of course, took advantage of the machine era through which it passed; it installed modern machinery and equipment; it facilitated the supply of power. To the latter end it has continued to improve the water power of

the Passaic river and to make that power available for manufacturing purposes at factory sites which it leases or sells.

We are obliged now, as we have been in the past, to construe the charter of the Society in a most favorable manner to the Society. (See paragraph XXXVII thereof.) Thus our courts have held, notwithstanding a holding to the contrary in some of the courts of our sister states, "that the production of electricity is a *species of manufacturing,*" and that the sale by the Society to the Public Service Electric and Gas Company, of its surplus power, "is not inconsistent with the charter obligation or limitation of the Society." (Underscoring supplied.) *Society* v. *Paterson,* 88 *N. J. L.* 123, 125, 126; 96 *Atl. Rep.* 92; reversed on other grounds, 89 *N. J. L.* 208; 98 *Atl. Rep.* 440.

In fine, we find as a fact, and on that finding conclude as a matter of law, that the Society has not, under the proofs here exhibited, been guilty of such misuser, non-user, or diversion of its corporate powers which would justify either a forfeiture of its charter or a judgment of ouster against it to the extent, as urged, of depriving it of its immunities from local and county taxes.

Although this disposition of the cause makes it unnecessary to treat of the other points here raised, nevertheless, we desire to mark the fact that we have carefully considered them and find that they are without merit.

The information is dismissed, but without costs.