THE STATE, THE SINGER MANUFACTURING COMPANY, PLAINTIFF IN ERROR, v. WILLIAM C. HEPPENHEIMER, COMPTROLLER, ET AL., DEFENDANTS IN ERROR.

1. A charter which exempts a corporation or its property from taxation, exempts also the shares of its stock held by individuals.

2. An express exemption of the shares from taxation, nothing else appearing, will also exempt the company itself from taxation.

3. The sixth section of the charter of the Singer Manufacturing Company exempts it from the operation of the act of April 18th, 1884, and the supplement thereto of March 16th, 1891.

On error to the Supreme Court.   For opinion of Supreme Court, see 25 *Vroom* 439.

For the plaintiff in error, *Richard V. Lindabury* and *Joseph H. Choate* (of New York).

For the defendants in error, *John P. Stockton*, Attorney-General.

The opinion of the court was delivered by

VAN SYCKEL, J.   The plaintiff in error is a manufacturing corporation, chartered by special act of the legislature of this state (*Pamph. L.* 1873, *p.* 971), with a capital stock of $10,000,000 duly issued.   The controversy relates to an assessment of $4,212.50 made by the state board of assessors against the company for the year 1891, under the supplement approved March 16th, 1891 (*Pamph. L.,* *p.* 150), of "An act to provide for the imposition of state taxes upon certain corporations, and for the collection thereof," approved April 18th, 1884.

It is called a franchise tax and is laid upon the entire capital of the company of $10,000,000 less $750,000, the assessed value of its personal and real property in this state.

The company is liable to the tax laid upon it, unless it is exempted therefrom by force of the provisions of the sixth section of its charter, which is as follows :

"6. That whenever five hundred thousand dollars shall have been paid in, said corporation may organize and proceed to business under this act, and shall immediately thereafter file with the secretary of state of this state a certificate of such payment and organization, whereupon, and not until then, this act shall take effect; and if and so long as the said corporation shall invest and keep invested in real estate within this state the sum of five hundred thousand dollars, the real and personal property of the said corporation not actually in fact within the State of New Jersey, and the stock of the said corporation held or owned by any of its

stockholders, shall not be liable to any tax or impost whatsoever."

As appears by the case, the company has invested $1,000,-000 of its capital stock in manufacturing in this state.

Previous to its incorporation in this state, the company was incorporated under the laws of the State of New York, where it had a large factory. It also had a factory in Glasgow, Scotland, one in Austria, and another in the State of Indiana.

Upon the granting of its charter by this state, its New York factory was abandoned, and the business was removed to Elizabeth, New Jersey, where a large factory was erected, giving employment to over four thousand men.

It is admitted that the company has had, ever since its incorporation, and that it still has more than $500,000 invested in real estate in this state.

The question to be solved is whether the sixth section of its charter constitutes an irrepealable contract with the state, and if it does, whether the imposition of this tax violates the contract.

The sixth section contains all the elements of a contract. There are present a subject-matter, parties and a consideration —on the one side is a complete performance, and on the other, acceptance.

That it is a contract under our adjudications there can be no question. *State* v. *Berry*, 2 *Harr.* 80; *Camden and Amboy Railroad Co.* v. *Hillegas et al.*, 3 *Id.* 11; *Bridge Co.* v. *Hoboken Land and Improvement Co.*, 2 *Beas.* 81, 86; *Mount Pleasant Cemetery Co.* v. *Newark*, 23 *Vroom* 539.

Is this contract irrepealable?

If the sixth section of the charter of the company contains the entire contract, it is unassailable by state legislation. Both the federal and state constitutions inhibit the passage of any law by the state impairing the obligation of a contract.

The state attempts to justify this tax by reading into the charter of the Singer company the sixth section of the act of 1846 (*Pamph. L., p.* 16), which is as follows:

" The charter of every corporation which shall hereafter be

granted by or created under any of the acts of the legislature, shall be subject to alteration, suspension and repeal in the discretion of the legislature."

In *New Jersey* v. *Yard*, 95 *U. S.* 104, the Supreme Court of the United States declared that notwithstanding the act of 1846, it was competent for the state legislature to make an irrepealable contract, and that therefore it was in every case a question whether it was intended to preserve to the state the right to repeal the contract at will.

Unless, therefore, such an intention can fairly be drawn from the terms of the contract, as agreed upon by the parties, there can be no departure from it.

There is nothing in the language of this contract which gives the slightest foundation for the suggestion that the state reserved the right to deprive the company at will of the benefit it was to receive under the agreement, after full performance by the company.

The undertaking is express, that if, and so long as the company shall invest and keep invested $500,000 in real estate in this state, the exemption shall continue.   There is no uncertainty in that respect; it excludes most clearly the idea that the act of 1846 was to be deemed a part of this charter.

It cannot be conceived that either the state or the company entered into a contract by which it was understood or intended that the state should be at liberty to deprive the company of the benefit to be derived from it as soon as the company had performed on its part.   Such a proposition could not have been seriously made on the part of the state, nor for a moment entertained on the part of the company.

The terms of the contract, and the circumstances attending it, repel the assumption that the entire engagement is not expressed in the sixth section of the act of incorporation.

The contract must be regarded as irrepealable.   The real question in the cause is, what is its true meaning and construction ?

In my view, it is unfortunate that judicial decision has so firmly established the doctrine that the legislature can barter

away so essential an attribute of government as that of the power to tax, but it is now too late to call it in question.

When a contract is fairly made, the good faith of the state must be preserved, and the contract performed according to a reasonable and just interpretation of it.

The company was induced to erect a large·and expensive factory in this state, by this .agreement to exempt from taxation, and it will be derogatory to the state to resort to any subterfuge, or narrow and sharp construction, in order to evade the effect of the contract.

It may be well to observe here that it could not have been supposed by those who voted for the constitutional amendments of 1875, that it was intended to bestow upon the legislative branch of the state government the power to disregard and violate the contracts into which the state had previously entered.

It would be a reflection upon the integrity of those who framed the amendments to infer such a power.

The exemption is that the real and personal property of the said corporation, not actually in fact within the State of New Jersey, and the stock of the said corporation, held or owned by any of its stockholders, shall not be liable to any tax or impost whatsoever.

It has long been the accepted law of this state that an enactment which exempts a corporation or its property from taxation, exempts also the shares of its stock held by individuals.

The reasoning of the court upon which that conclusion was rested was that, as the entire burden of taxes levied upon a corporation ultimately fell upon the shares of stock, it must have been the intention of the legislature in exempting the former to relieve the latter. *State* v. *Branin,* 3 *Zab.* 484; *State* v. *Bentley, Id.* 532; *State* v. *Powers,* 4 *Id.* 400.

The converse of this it seems must be conceded, so that an express exemption of the shares from taxation will also exempt the company. Otherwise, the exemption is, in fact, not an exemption, for every burden cast upon the property of the

company is a burden upon the shares which represent that property.

I agree with the court below that we must resort to statutory construction to ascertain whether this case is within that rule. The legislature, if unhampered by contract, undoubtedly has power to exempt the company or its property and reserve the right to tax the shares, or to exempt the shares and reserve the right to tax the company and its property.

The insistment is that the legislative intent to be drawn from the language of the sixth section of the charter is to relieve from taxation the shares of stock in the hands of stockholders, but to reserve the right of levying upon the corporation itself any legal imposition, except a tax on its real and personal property outside of New Jersey.

In my judgment, that is not the correct interpretation of the statute, nor will it, if accepted, legalize the imposition.

An exemption of the shares, in the absence of other language, would have exempted from taxation the property within as well as that without the state, and therefore the added words were inserted in order that the real and personal property of the company in this state might be taxed here. That is their apparent purpose and their entire effect. The statute was drawn to secure to the state the benefit of taxing the property which the company, for the grant of its franchises, agreed to bring into the state.

" The real and personal property of the company not actually in fact within the state, is not to be liable to any tax or impost whatsoever."

More comprehensive language to assure absolute immunity could not be employed.

The state pledged exemption, not from tax only but from any imposition whatsoever.

The word " imposition " includes every kind of enforced contribution to the public treasury.

What the corporators evidently apprehended, and what the charter in express words guards against, was the laying of an imposition of any nature upon the real and personal property of the company outside of this state.

It was well settled and understood that New Jersey could not impose a direct tax upon property of its citizens located beyond its jurisdictien. *McCulloch* v. *Maryland,* 4 *Wheat.* 415.

It was not, therefore, to shield the company from direct taxation of its property not actually within the state, that this provision in its charter was secured. Immunity to that extent existed without the consent of the state.

The manifest object was to restrain the state from levying an indirect imposition upon the property of the company outside of the state, in the mode now resorted to or in any other way. The language is most aptly chosen to protect the company.

The "real and personal property of the company not actually in fact within the state," is exempted from any tax or impost whatsoever.

The real and personal property of the company invested in Springfield, in Austria and Scotland and other places without our state, was, in one sense, within our state, in that it was represented by the ten millions of its capital stock issued under its charter here, but it was not actually in fact within the State of New Jersey.

The imposition of this tax upon so much of the ten millions of capital stock of the company as is not represented by property in this state, is in its effect as much an impost on property out of this state as if it was directly put upon the property itself and not upon the capital which stands for it. It is an attempt to do by indirection what it is agreed in the contract shall not be done. The fact that it is styled a franchise tax cannot validate it. It is none the less an interdicted imposition because it is given a new name.

The franchise of the company is the right to hold property and exercise its corporate privileges.

All those rights and privileges were granted to the company by its charter upon the terms specified in it. Those terms cannot be changed or altered without the consent of both parties to the charter contract. The right to make fur-

ther exactions upon the company under any pretext involves the power on the part of the legislature to render the grant to the company nugatory and of no value, by impositions of like character, to such an extent that the business of the company cannot be prosecuted with profit to the shareholders.

The company cannot be brought within the operation of the act of March 16th, 1891, without impairing the obligation of its contract with the state.

The judgment below must, therefore, be reversed, and the imposition which is the subject of this controversy must be vacated and set aside.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, NIXON.    11.