LEDBETTER, APPELLANT, v. CITY OF GREAT FALLS, ET AL., RESPONDENTS.

No. 8882.

Submitted September 28, 1949. Decided December 5, 1949.

213 Pac. (2d) 246.

Messrs. Clarence W. Murch and Julius J. Wuerthner, both of Great Falls for appellant. Mr. Murch and Mr. Wuerthner argued orally.

Mr. R. J. Nelson, County Attorney, and Mr. William Scott, Jr., both of Great Falls for respondent. Mr. Nelson argued orally.

MR. JUSTICE FREEBOURN:

This is an appeal from an order of the district court of the eighth judicial district of the state of Montana, in and for the county of Cascade, sustaining defendant's demurrer to plaintiff's amended complaint and entering judgment for costs in favor of defendant.

On March 30, 1948, plaintiff filed his amended complaint, the essential allegations of which are: The corporate capacity of defendant; its ownership and control of the street, curbing, boulevard and sidewalk in front of a residence located at 620 Eighth Avenue North in Great Falls, Montana; the existence of a city ordinance numbered 245, covering the connection of water service pipes between the city main and residence; that on November 6, 1946, one Johnson, a licensed plumber and layer of water service pipes, was given a license and permit by defendant under such ordinance, to lay water service pipes from the water main in the street to the said residence; that immediately after the issuance of the permit and pursuant to the same, a ditch was excavated for the laying of water service pipes from the street main on Eighth Avenue North to the said residence, such ditch being six feet deep and two feet wide, extending from the main

past the curb and through the boulevard or parking to the sidewalk; that on November 23rd, in the nighttime, plaintiff, without fault on his part, while walking from 618 Eighth Avenue North to his automobile, parked in the street, having no notice or knowledge of such excavation, fell into the same and was seriously and permanently injured; that such injury was proximately due to failure on the part of defendant to cover such excavation, to inspect the same, or to take any action to see that such excavation was protected by red lights and barricades; and that such excavation had been uncovered, unlighted, unbarricaded and open for sixteen days and nights prior to plaintiff's injury.

Defendant filed a general and special demurrer to the complaint. By stipulation between the parties the special demurrer was withdrawn and the general demurrer argued and submitted to the court. The court sustained the general demurrer, holding the complaint did not state facts sufficient to constitute a cause of action.

Ordinance 245, pleaded in the complaint, provides, among other things: (1) "No person * * * shall run any water service pipe * * * who shall not have first obtained from the city council a license for running water service pipes;" (2) that "the application for a license * * * shall be endorsed by the city engineer * * *" (3) "Upon the granting of such a license * * * the licensee shall file with the city clerk a bond * * * approved by the city council, conditioned for the protection of the City of Great Falls, against all losses or damages which may occur on account of * * * the carelessness or negligence of the licensee or his * * * employees * * *;" (6) "before doing any work in connection with * * * any water service or excavating any trench, for the purpose of laying or repairing any water service pipe, the licensee shall obtain from the office of the city engineer a written permit which will give the location, nature and purpose of the proposed work * * *;" (7) "all new water service pipes shall be laid not less than five feet below the ground surface of the

street. Before any trench shall be filled or any pipes covered, said pipes shall be inspected and approved by the city engineer * * *;'' (10) ''Barricades shall be placed around excavations at all times and red lights shall be maintained from dark until sunrise.''

It is contended that the complaint does not state facts sufficient to constitute a cause of action and that the demurrer was properly sustained because the complaint did not allege the city had actual notice of the existence of the unbarricaded and unlighted excavation required by section 5080, R. C. M. 1935, as amended by Chapter 122, Laws of Montana 1937, which is as follows:

''Before any city or town in this state shall be liable for damages to person and/or property for, or on account of, any injury or loss alleged to have been received or suffered by reason of any defect or obstructions in any bridge, street, road, sidewalk, culvert, park, public ground, ferryboat, or public works of any kind in said city or town, it must first be shown that said city or town had actual notice of such defect or obstruction and reasonable opportunity to repair such defect or remove such obstruction before such injury or damage was received; the city clerk must make a permanent record of all such reported defects and shall report to the city street commissioner immediately upon notice of·such defect or obstruction; and the person alleged to have suffered such injury or damage, or someone in his behalf, shall give to the city or town council, commission, manager, or other governing body of such city or town, within sixty days after such injury is alleged. to have been received or suffered, written notice thereof, which notice shall state the time when and the place where such injury alleged to have occurred. Provided, however, that this section shall not exempt cities and towns from liability for negligence because of failure to properly place signs, markers or signals to warn persons of excavations or other obstructions existing and caused by said city or town, upon any

bridge, street, alley, road, sidewalk, pavement, culvert, park, public ground, ferryboat or public works of any kind."

It is the duty of a city, owed to the public generally, to keep its public streets or walks in a reasonably safe condition for travel. Olson v. City of Butte, 86 Mont. 240, 283 Pac. 222, 70 A. L. R. 1352; Childers v. Deschamps, 87 Mont. 505, 290 Pac. 261; Headley v. Hammond Bldg., Inc., 97 Mont. 243, 33 Pac. (2d) 574, 93 A. L. R. 794; Nord v. Butte Water Co., 96 Mont. 311, 30 Pac. (2d) 809.

This duty extends to dangerous conditions near the sidewalks. Tiddy v. City of Butte, 104 Mont. 202, 65 Pac. (2d) 605.

Such duty, as respects the public, rests primarily upon the city, and the obligation to discharge this duty cannot be evaded, suspended or cast upon others, by any act of its own. 4 Dillon Municipal Corporations, 5th Ed., sec. 1720, pp. 3020, 3021, 3022; Mulder v. City of Los Angeles, 110 Cal. App. 663, 668, 294 Pac. 485; 6 McQuillin, Municipal Corporations, 2nd Ed., sec. 2834, p. 1158.

The purpose of the notice required in section 5080 is to enable the city to prevent accidents by repairing or guarding the defect or obstruction, thus protecting the traveling public. 25 Am. Jur., "Highways," sec. 441, p. 733; 4 McQuillin, Municipal Corporations, 2nd Ed., sec. 1810, pp. 1049-1050.

Section 5080 does not expressly mention excavations, defects or obstructions created by permission of a city. Any reasonable construction of this section, which preserves the primary duty of the city to keep its streets in a reasonably safe condition for travel must be made. A reading of the section clearly leads to the conclusion that the "defect" or "obstruction" of which actual notice is required applies only to such as arise and are created without notice, knowledge or permission of the city. That the city must have "reasonable opportunity to repair such defect or remove such obstruction before such injury," strengthens this conclusion. The city could not "repair" or "remove" the water service excavation, giving these words their ordinary

meaning, since "repair" means "to restore to a sound or good state after decay, injury, dilapidation, or partial destruction," etc., while "remove" means "to change or shift the location of, to remove by lifting, pushing aside," etc. Merriam's Webster's New International Dictionary.

Here the street could be made safe for travel by filling in the excavation, which would defeat the purpose for which it was opened, or by seeing barricades and red lights were placed. Section 5080 is silent as to these things.

Such excavation disturbed the surface of the street in such ▇ a manner and to such an extent as to necessitate the taking of precautions for the protection of travelers. It was inherently or intrinsically dangerous. 25 Am. Jur., "Highways," sec. 439, pp. 730, 731.

If it be said that "defect" and "obstruction," as used in ▇ section 5080, include an excavation opened in a public street by permission of the city, the requirement of section 5080 that the city be given actual notice was met when the city issued the permit to open the excavation.

When the city granted permission to create the excavation it had actual notice and knowledge of the nature, character and purpose of the excavation, its location, that it would be open within a reasonable time after the issuance of the permit, that it would remain open until the service pipes were in and covered, that the work was in progress, and that such excavation would require barricades and red lights as warnings in order to make the street safe for travel.

There was little difference in the notice and knowledge which the city had when the excavation was opened by its permission and where the city caused the excavation to be opened. Section 5080 specifically states cities shall not be exempt from "liability for negligence because of failure to properly place signs, markers or signals to warn persons of excavations or other obstructions existing and caused by said city." We believe it would be unreasonable to require that, with notice and knowledge of these

facts before the excavation was open or in existence, further notice be given the city before it was compelled to discharge its primary duty of exercising ordinary care to keep the street in a reasonably safe condition for travel, by inspection and seeing that barricades and red lights were placed. The case at bar, where the excavation was open, unbarricaded and unlighted for sixteen days and nights, resulting in injury to a traveler on the street, speaks convincingly in support of this belief. Further, section 8781, R. C. M. 1935, provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself, in all cases in which, by prosecuting such inquiry, he might have learned such facts."

Having issued a permit to open the excavation, it became the duty of the city to exercise ordinary care to make reasonable inspection to see that barricades and red lights were placed, so that the street was in a reasonably safe condition for travel. Failing in this the city was negligent.

To require this duty of the city is no hardship, since "city officials are charged with the duty to keep in touch with the condition of the city's streets and alleys and are not to be excused if they fail in the performance of that duty." Barry v. City of Butte, 115 Mont. 224, 142 Pac. (2d) 571, 573.

"The power of a city to permit any private use of its streets can be exercised only for the benefit of the general public. (Citing cases.) Therefore a city is liable, in the first instance, in case of injury, although the defect is caused by the negligence of another, also liable." Nord v. Butte Water Co., supra [96 Mont. 311, 30 Pac. (2d) 812]. See also, Olson v. City of Butte, supra; and McCabe v. City of Butte, 46 Mont. 65, 125 Pac. 133, 135.

In Mulder v. City of Los Angeles, supra [110 Cal. App. 663, 294 Pac. 486], where permission was given to make fills on a street, the Supreme Court of California said: "But in such case we are of the opinion, that the duty of the city to make reasonable provision against damage to private persons or property

arising out of such work, and its liability for failure to use reasonable care therein, was not different from the duty and liability which would be imposed where the work was done directly by the city through its street work employees under direction and control of the board of public works. * * *

"On the facts shown by the evidence in the case at bar it was the duty of the city through its department of public works, when it elected to permit the work in question to be done by Butterfield, to maintain over his work such supervision as would reasonably guard against any negligence which would leave the street in an unsafe and dangerous condition. The city was not authorized to abdicate its powers or surrender to a private person its duty to exercise proper supervision of the work which it permitted to be done."

25 Am. Jur., "Highways," pp. 730, 731, sec. 439, has this to say: "There is some difference of opinion with respect to the necessity for knowledge or notice on the part of a municipal or quasi-municipal corporation of dangerous conditions created in connection with acts performed under the authority of a license granted by such corporation, as a condition precedent to its liability. According to many authorities the test of the corporation's liability without subsequent independent notice is whether the work or acts to be performed will involve the disturbance or obstruction of the way in such a manner or to such an extent as to necessitate the taking of precautions for the protection of travelers, or, as sometimes stated, whether the work is inherently or intrinsically dangerous. The theory underlying many decisions is that the issuance of such license is an element which of itself serves to affect the corporation with anticipatory notice of all such dangerous conditions as are likely to be produced by the authorized acts if the licensee fails to take the precautions which are appropriate under the circumstances for the purpose of securing the safety of travelers. * * *

"With respect particularly to excavations, one line of decisions holds that the corporation is bound to supervise the work of the

licensee with respect to the guarding of the excavation and the proper restoration of the original condition of the street.'' See also, 6 McQuillin, Municipal Corporations, 2nd Ed., sec. 2831, pp. 1150, 1151.

In District of Columbia v. Woodbury, 136 U. S. 450, 10 S. Ct. 990, 995, 34 L. Ed. 472, the Supreme Court of the United States said: ''People must build houses, and, in order to do that, it is necessary to excavate for cellars and areas, if needed, and to dig trenches to connect with the water mains, gas pipes and sewers. Nobody has a right to do this without a permit from the authorities, and, if any person undertakes to do it without a permit, he would be responsible for any injury resulting; but the District would not be, unless it had the notice already spoken of. If a permit is granted, as is usually the case, the fact is notice to the authorities that the work is in progress, and then they are charged with the duty of seeing that it is properly conducted.

''These works are necessarily dangerous to life and limb, and it is the duty of a person doing the work to protect it against accident to travelers on the street, and the duty of a private person is very much the same as that of the District itself, when it is prosecuting an improvement. If a private individual fails to protect the excavation or hole, or whatever it may be, it is the duty of the district authorities to see that it is protected, and they are held responsible that he shall do it; for they were notified that he was going on with the work when he obtained his permit.''

In Tepfer v. City of Wichita, 90 Kan. 718, 136 Pac. 317, 318, 49 L. R. A., N. S., 844, the Kansas Supreme Court said: ''Assuming, as we must, that the street was plowed with authority from the city commissioner, it must be held that the city is chargeable with notice and knowledge of the dangerous condition caused by the authorized act. The city, having been given the control of the streets and charged with the responsibility of maintaining them in a safe condition for use by the public, cannot, by any contract which it may make or permission which it may give to third persons to dig therein, avoid liability for injuries result-

ing from a breach of this primary duty. The obligation to discharge this duty cannot be evaded by intrusting the duty to others, nor can the city escape liability for resulting injury because the plowing of the street was done by another under its authority. So far as its liability is concerned, it is immaterial whether the defect in the street is caused by the direct act of the city or that of a third party acting under authority of the city. If the plowing of the street had been done by officers or employes of the city, it would not have been necessary to have given the city special notice of the dangerous condition of the street, and no more was it necessary where a third party was authorized to plow it and to take earth therefrom."

In Hyde v. City of Boston, 186 Mass. 115, 71 N. E. 118, 119, the Supreme Court of Massachusetts said: "It appeared that a deep trench had been excavated in the street for the purpose of laying a drain from a building in the process of erection to the main sewer. The trench extended under the railway track, and it was admitted that the drain was being laid under a permit from the city to one Shaughnessey. The evidence tended to show that the trench had been there four or five days. * * *

"So far as the street was suffered to remain open for travel, it was the duty of the city to take proper precautions to guard against accidents, and to render it safe. * * *

"The city had notice, or at least could be found to have had notice, of the existence of the trench, and of the circumstances under which it was being dug, and was bound to take reasonable precautions for the safety of travelers. (Citing other Massachusetts cases.)" See also: Bennett v. City of Everett, 191 Mass. 364, 77 N. E. 886.

In Repperd v. Chapin et al., 190 Mich. 19, 155 N. W. 706, the Supreme Court of Michigan said: "It appears that the other defendants are licensed plumbers in the city of Jackson, and a permit had been given to them the day before by the city to make this excavation, and that an ordinance of the city of Jackson provided that no such excavation should be left open over

night. * * * In the present case the city of Jackson authorized the other defendants to open the excavation. It thereby had notice and knowledge that the excavation was about to be made. After that its liability to third persons for injuries was no different than as though it were doing the work itself. (Citing other Michigan cases.)''

In Russell v. Inhabitants of Town of Columbia, 74 Mo. 480, 41 Am. Rep. 325, it was held that where the plaintiff's injury was caused by falling into a trench dug for a gas main, the contention that affirmative proof of notice, actual or constructive, was a prerequisite to liability on the part of the defendant was rejected on the ground that ''the trench having been dug by a company, to which the town of Columbia had given permission to make it, and which permission it was at liberty to withhold, the liability of the corporation is the same as if it had been made by its own servants, by its direction.'' See also: Lindsay v. Kansas City, 195 Mo. 166, 93 S. W. 273.

In Spiker v. City of Ottumwa, 193 Iowa 844, 186 N. W. 465, 466, the Supreme Court of Iowa said: ''Having given Burnaugh a permit to enter upon and tear up the street for his private use and convenience, and of necessity to interfere with the public use of the street and (unless properly guarded) to create a menace to the safety of travelers lawfully using the public way, can the city escape liability for injuries caused by the negligence of the permit holder in making the excavation, for no better reason than the failure of plaintiff to prove that notice, actual or constructive, of the open and unguarded condition of the trench had been brought home to it before the injury occurred? * * *

''All the purposes to be served by notice were forestalled or accomplished in the fact that the city, which is charged with the nondelegable duty to care for its streets and keep them free from nuisances, was notified in advance and gave express permission to Burnaugh to dig the trench which did the mischief. This is not only the rule of the great weight of authority, but is manifestly just and reasonable.''

In City of Denver v. Aaron, 6 Colo. App. 232, 40 Pac. 587, 588, the Supreme Court of Colorado said: "The duty of keeping its streets in repair and in reasonably safe condition for travel in the usual modes rests primarily upon the municipality, and it must answer for any injury occasioned by its neglect of such duty. This duty cannot be avoided, suspended, or cast upon others by any act of its own. 2 Dill. Mun. Corp., sec. 1024. Notice, actual or implied, of an obstruction or defect in a street, occasioned by accident, or by the act of a wrongdoer, must be brought home to the city, before any liability can be fastened upon it; but it cannot defend upon the ground of want of notice where the act is done by itself or by its authority. If it authorizes dangerous excavations to be made in its streets, either by contractors directly under it or by persons to whom license for the purpose is granted, it cannot unburden itself of its responsibility upon those by whom the work is done. If it permits others to tear up its streets, it is its duty to see that they do the work in a safe manner. It is immaterial what measure of control of the work it has reserved in itself; nor does its liability rest upon the doctrine of respondeat superior. Being charged with the care of its streets, it cannot relinquish its supervisory control of them; and, whether it places them in a dangerous condition itself, or permits others to make them dangerous, it is equally responsible. 2 Dill. Mun. Corp., sec. 1027; Storrs v. City of Utica, 17 N. Y. 104 [72 Am. Dec. 437]; Russel v. Inhabitants of Columbia, 74 Mo. 480 [41 Am. Rep. 325]; Haniford v. City of Kansas, 103 Mo. 172, 15 S. W. 753; Boucher v. City of New Haven, 40 Conn. 456."

In Kinsey v. City of Kinston, 145 N. C. 106, 58 S. E. 912, 913, the Supreme Court of North Carolina said: "It is admitted that on the day the excavation was made the defendant issued its permit authorizing it to be done. The defendant's authorities were therefore expressly charged with knowledge of the character of the work and its possible dangers to those of the citizens who should use the street especially after nightfall, as the plaintiff

happened to do. A ditch cut across a much used street in a city is necessarily dangerous, and it is the duty of the person doing the work to protect it against accident to those using the street. The duty of a private person is very much the same as that of the city itself when it is prosecuting an improvement. If a private individual fails to protect an excavation in the street, then it is the duty of the city authorities to see that it is protected, and they are held responsible that she should do so, for they were notified that he is going on with the work when he obtains the permit. The city is liable for negligence in failing to exercise supervision and inspection if injury results by such excavation made by an individual under such permit or license issued by it."

In 43 C. J., "Municipal Corporations," sec. 1820, pp. 1042 1043, it is stated: "Municipal corporations are chargeable with knowledge of their own acts, or those ordered by them; and therefore whenever defective conditions in streets are due to the direct act of the municipality itself, or of persons whose acts are constructively its own, as where work is done under contract with the municipality, or, as held in some cases, where the defect is created by persons acting under a license or permit from the municipality, no notice need be shown, or, as it is otherwise stated, notice of the defect is necessarily implied in such cases. * * *

"The fact that actual notice, as a condition of municipal liability, is expressly provided for by statute or municipal charter does not change the rule that notice is not necessary when the defective condition is due to the direct act of the municipality or of those acting by its authority, including cases of defects in original construction."

The complaint alleges, "that such injury was proximately due to failure on the part of defendant to cover such excavation, to inspect the same, or to take any action to see that such excavation was protected by red lights and barricades; and that such excavation had been uncovered, unlighted, unbarricaded, and open for sixteen days and nights prior to plaintiff's injury."

The complaint states a cause of action.

We are mindful of what this court has said in Maring v. City of Billings, 115 Mont. 249, 142 Pac. (2d) 361; and Lazich v. City of Butte, 116 Mont. 386, 154 Pac. (2d) 260.

They are, however, readily distinguishable from the case at bar. In the Maring Case no permit had been issued by the city for the opening of the excavation, and this court held plaintiff's complaint showed contributory negligence as a matter of law. In a special concurring opinion in the Maring Case [115 Mont. 249, 142 Pac. (2d) 363], Chief Justice Johnson, then presiding, said: "If the city were in this case liable under the statute, it must logically be because the application for and issuance of the permit gave actual notice of the excavation * * *."

In deciding the Lazich Case [116 Mont. 386, 154 Pac. (2d) 261], this court went on the proposition that plaintiff predicated her action "upon the theory that when the city issued the permit to the contractor who did the remodeling work, the city thereby constituted the contractor the city's agent * * *."

For the reasons stated the judgment of the lower court is reversed with instructions to overrule defendant's demurrer.

MR. JUSTICE BOTTOMLY concurs.

MR. JUSTICE ANGSTMAN, concurring specially:

I concur in the opinion of Mr. Justice Freebourn, but wish to add the following.

Section 5080, R. C. M. 1935, as amended, is divided into two parts. The first part relating to defects and obstructions generally requires actual notice on the part of the city before there can be liability. The second part makes cities and towns liable for negligence in failing to properly place signs, markers or signals to warn persons of excavations or other obstructions "existing and caused by said city or town, upon any bridge, street, alley, road, sidewalk, pavement, culvert, park, public ground, ferryboat or public works of any kind." Under the second part of the statute no notice is necessary when the excava-

tion is caused by the city. Watson v. City of Bozeman, 117 Mont. 5, 156 Pac. (2d) 178; Barry v. City of Butte, 115 Mont. 224, 142 Pac. (2d) 571.

I think when the city issues a permit to make an excavation, it is a joint actor in making the excavation and that at least some of the authorities cited in the opinion of Mr. Justice Freebourn so show. Among the cases so holding are these: Tabor v. City of Buffalo, 136 App. Div. 258, 120 N. Y. S. 1089; Spiker v. Ottumwa, 193 Iowa 844, 186 N. W. 465; and City of Denver v. Aaron, 6 Colo. App. 232, 40 Pac. 587. And see 63 C. J. S., Municipal Corporations, sec. 799, p. 111, and sec. 825, p. 163. Lasityr v. City of Olympia, 61 Wash. 651, 112 Pac. 752; Wrighter v. A. A. Adams Stores, 232 App. Div. 351, 250 N. Y. S. 98; Leverone v. City of New London, 118 Conn. 463, 173 A. 108.

Under the laws of this state no excavation in a street can be made without the permission of the city council or its authorized officer. Sec. 5039.72, R. C. M. 1935.

The very purpose of requiring a permit from the city to make excavations in the streets "is to give notice to the municipality that a certain street or part thereof is about to be excavated so as to enable the corporate authorities to take the necessary steps to guard the excavation or compel the company to do so, in order that municipal liability for damages for injuries received by third persons from such excavations may not arise." 4 McQuillin, Municipal Corporations, 2nd Edition, sec. 1810, p. 1050.

It is asserted in the dissenting opinion of Mr. Chief Justice Adair that this court in other cases has taken the view that there is no liability on the part of the city in a case of this kind without compliance with the first part of section 5080, as amended. This is not so.

The case of Andrews v. City of Butte, 116 Mont. 69, 147 Pac. (2d) 1020, is cited and relied upon in the dissenting opinion.

In that case the defect complained of was a defective sidewalk and it was the first part of section 5080, as amended, that controlled. There was no claim that the case was ruled by the latter

part of that section. There was no contention that the defect was caused by the city.

The case of Lazich v. City of Butte, 116 Mont. 386, 154 Pac. (2d) 260, is also relied on in the dissenting opinion. That case too was ruled by the first part of section 5080, as amended. There the defect causing the injury was loose boards on a sidewalk. The city had issued a permit to erect a building. It did not issue a permit to pile loose boards on the sidewalk, and the court merely held that the permittee of the building permit was not the agent of the city so as to fasten liability on the city for acts of the builder in placing boards on the sidewalk. There was no possible way of holding that the city placed the loose boards on the sidewalk. Hence it was the first part of section 5080 that controlled.

The case of Maring v. City of Billings, 115 Mont. 249, 142 Pac. (2d) 361, is also relied upon in the dissenting opinion.

In that case the injury was caused by an unguarded excavation. But it affirmatively appears from the specially concurring opinion of Chief Justice Johnson that no permit was issued for making the excavation. In that case the contention was made that because of a custom followed by the city employees the case stood as if a building permit had been issued. It was pointed out in the opinion of Chief Justice Johnson that the issuance of a building permit was no notice that an excavation was to be made; that there was a vast difference between a building permit and a permit to make an excavation.

Hence that case too was controlled by the first part of section 5080. But in that case Chief Justice Adair in his dissenting opinion said: "It is not, however, necessary in all cases that the city receive actual notice of the defective condition in advance of the happening of the accident or the sustaining of the injury for liability to attach.

" 'If the defective condition is due to the act of the municipality itself or of its contractors or employees, no other notice of any kind, either actual or constructive, is necessary in order to render the municipality liable for damages proximately caused

thereby.' City of Grandview v. Ingle, Tex. Civ. App., 1936, 90 S. W. (2d) 855, 856. See, also, Barry v. City of Butte, 115 Mont. 224, 142 Pac. (2d) 571.

"So too, actual notice of the existence of the defect is not required where as is here alleged the city had issued a permit or order or otherwise authorized another to enter upon and tear up a public street for his private use."

Mr. Justice Erickson also took practically the same view in that case as did Chief Justice Adair.

This case is different from any heretofore considered by this court. This case is controlled by the last part of section 5080, R. C. M. 1935, as amended, and it is the first case where this court has ever been called upon to apply that section where the city gave a permit to erect or construct the offending agency. In this case the city gave a permit to make the very excavation that caused the injury complained of. Because of this difference in the facts there is no basis for the claim asserted in the dissenting opinion that we are establishing one rule for Great Falls and a different one for Billings and Butte, nor is there present the requisites for calling forth the salutary principles of stare decisis with which I agree when applicable. Ambiguities in the statute, if any, should be construed against the city. Savannah v. Helmken, 43 Ga. App. 84, 158 S. E. 64.

The conclusion that there is liability on the part of the defendant will not work any particular hardship on cities. Before issuing a permit the city may exact a bond from the permittee conditioned to hold the city harmless from loss or damage because of any negligence in conducting the work. In fact, the ordinance involved here provides for such a bond in the sum of $1,500.00.

I have given but little consideration to the question of the validity of section 5080, as amended, a point not raised by the parties, but treated in the dissenting opinion. I did find that there is a conflict of authority on the point. See the note in 83 A. L. R. 289. I think that question should not be considered by us until and unless it is thoroughly briefed and argued.

The Texas cases cited in the dissenting opinion are from inter-

mediate courts. The Supreme Court of Texas holds that such a provision as our section 5080, as amended, is unconstitutional. Hanks v. City of Port Arthur, 121 Tex. 202, 48 S. W. (2d) 944, 83 A. L. R. 278.

I have considerable doubt too whether the city's liability to use reasonable care to keep its streets in reasonably safe condition is a statutory liability rather than a common law liability, which seemingly makes a difference in the legislature's right to enact a statute such as section 5080, as amended. But in the consideration of this case I have assumed that the statute is valid.

MR. CHIEF JUSTICE ADAIR, dissenting:

This action was commenced by plaintiff Ledbetter against Marvin A. Tucker, Edwin Johnson, and City of Great Falls, defendants, to recover $11,096.75 damages for personal injuries claimed to have been sustained by plaintiff in falling into an open trench dug by the defendant Tucker, under the direction and supervision of the defendant Johnson, a licensed plumber, and extending between the curbing and the sidewalk adjacent to a public street in defendant city.

On March 10, 1948, the cause was brought on for trial and a jury empaneled. It there appearing that the defendant Tucker had neither appeared nor been served with process, the action was dismissed as to him on motion of plaintiff. The objection of the defendants Johnson and City to the introduction of any evidence on the ground that the complaint failed to state facts sufficient to constitute a cause of action against them was sustained by the trial court.

Three days thereafter, for a consideration of $675 paid plaintiff by the defendant Edwin Johnson, a settlement was effected of all claims and damages against such defendant,—a covenant not to sue was executed and the case dismissed as to him.

On March 30, 1948, plaintiff filed an amended complaint. Therein he named the City of Great Falls, as the only defendant and alleged: That on November 6, 1946, the defendant city issued to Edwin Johnson, a licensed plumber, a permit to install water

service to the private residence at 620 Eighth Avenue North, owned by Marvin A. Tucker; that immediately after the issuance of said permit "the said Marvin A. Tucker, under the direction and supervision of the said Edwin Johnson, and the permit issued to said Johnson, and as his duly authorized agent, opened, dug and excavated a trench or ditch for the purpose of laying water service pipes from the water service main on Eighth Avenue North to the said residence * * * a portion of said ditch and excavation being located across the boulevard or parking space * * * between the curbing and the sidewalk immediately in front of said residence at 620 Eighth Avenue North in said defendant city;" that between 3:30 and 4:00 o'clock a. m., on the morning of November 26, 1946, plaintiff, while walking from a friend's residence at 618 Eighth Avenue North to his automobile parked on the south side of said avenue "mistook said excavation and trench for a cross walk or foot pavement across said boulevard and * * * stepped into and violently plunged and fell into said open excavation," sustaining the injuries complained of; that at the time of the accident the excavation had been left open, exposed and unfilled for about sixteen days during which time it was not protected by lights, flags, fences, barricades, guards or any safety device to warn or protect the public lawfully using said sidewalk and boulevard. Various provisions of the city's ordinance No. 245 are pleaded which impose upon any person, firm or corporation running any water service pipes in the city the duty to obtain a permit therefor from the city engineer,—to lay the pipes not less than five feet below the ground surface of the street,—to place barricades around the excavations at all times,—to maintain red lights from dark until sunrise,—and to furnish an approved bond of $1,500 conditioned that the permittee "shall properly refill any and all trench or trenches made or dug by him * * * in the streets of the City."

There is no allegation that the city or any of its employees dug the trench. On the contrary, it affirmatively appears from plaintiff's pleading that Marvin A. Tucker, the owner of the dwelling to be served by the installation, acting under the direc-

tion and supervision of his plumber, Edwin Johnson, who had obtained a permit therefor, and as the plumber's duly authorized agent, ''opened, dug and excavated'' the trench wherein plaintiff claims to have fallen.

The city's ordinance governing the issuance of permits to qualified licensed plumbers does not contemplate that the city issue permits to itself for the making by it of excavations in its own streets. It is only where, as here, the work is to be done by others than the city that a permit is required. It was the licensed plumber Johnson, contracting to install water service pipes for the house owner Tucker, who required and obtained a permit to authorize him to dig the trench across the city's boulevard and parking and it was they,—not the city,—who caused the excavation and allowed it to be and exist.

There is no allegation that at or before plaintiff's claimed injuries were received the city had any actual notice of the obstructing excavation so left open and unprotected by the house owner and his plumber.

To the amended complaint the city interposed a general demurrer urging that plaintiff's pleading was fatally defective in failing to state that the city had actual notice of the obstructing excavation and of the conditions thereto attending prior to the happening of the accident as is required before municipal liability may attach.

The trial court sustained the demurrer with prejudice and ordered judgment for the defendant city. From the order and judgment entered against him plaintiff appealed.

It has long been the settled law of most jurisdictions, including this, that if injuries result from a defect or obstruction in a street caused by the act of a third person or by the failure of the municipality to repair, remove, or remedy, in general, such municipality is not liable unless and until it has first had notice of the offending instrumentality or condition or of such facts and circumstances as would, by the exercise of reasonable diligence, lead a person of reasonable prudence and care to such

knowledge. 7 McQuillin, Municipal Corporations, 2nd Ed., sec. 2996, p. 288.

The crux, therefore, of the instant lawsuit against the defendant city is notice. Lazich v. City of Butte, 116 Mont. 386, 390, 154 Pac. (2d) 260, 262.

Notice to a municipality is of two kinds,—actual and constructive. 7 McQuillin, Municipal Corporations, 2nd Ed., sec. 3000, p. 303.

Prior to the year 1937 constructive notice was held to be sufficient under the law of this jurisdiction. McQuillin, Municipal Corporations, 1947 Supplement, 2nd Ed., sec. 3002, p. 1449, note 56; Remesz v. City of Glasgow, 95 Mont. 595, 28 Pac. (2d) 468, 470.

In 1937 the legislature amended the law by the enactment of Chapter 122, Laws of 1937, imposing additional limitations upon the liability of municipalities. The Act provides: "Before any city * * * in this state shall be liable for damages to person and/or property for, or on account of, any injury or loss alleged to have been received or suffered by reason of any defect or obstructions in any * * * street, road, sidewalk, * * * park, public ground, * * * or public works of any kind in said city * * * *it must first be shown that said city * * * had actual notice of such defect or obstruction* and reasonable opportunity to repair such defect or remove such obstruction *before such injury or damage was received* * * * Provided, however, that this section shall not exempt cities * * * from liability for negligence because of failure to properly place signs, markers or signals to warn persons of excavations or other obstructions existing and caused by said city * * * upon any * * * street, * * * sidewalk * * * park, public ground * * * or public works of any kind." (Emphasis supplied.)

In the leading case of Schigley v. City of Waseca, 106 Minn. 94, 118 N. W. 259, 262, 19 L. R. A., N. S., 689, 16 Ann. Cas. 169, the court said: "It is thus clear upon principle and authority that the Legislature may grant or deny to individuals a right of action against municipal corporations for injuries resulting from

the negligent manner in which streets and highways are maintained. Having this power, it may grant the right of action upon any conditions which it chooses to prescribe. It may therefore provide that the city shall not be liable unless it has had actual notice of the existence of the defect in the street for a designated or reasonable time before the accident." To like effect see: Mac-Mullen v. City of Middletown, 187 N. Y. 37, 79 N. E. 863, 11 L. R. A., N. S., 391; McNally v. City of Cohoes, 53 Hun. 202, 6 N. Y. S. 842, affirmed 127 N. Y. 350, 27 N. E. 1043; Gregorius v. City of Corning, 140 App. Div. 701, 125 N. Y. S. 534; Casey v. Auburn Telephone Co., Sup., 131 N. Y. S. 1, affirmed 148 App. Div. 900, 132 N. Y. S. 1123; Forsyth v. City of Saginaw, 158 Mich. 201, 122 N. W. 523; Goddard v. City of Lincoln, 69 Neb. 594, 96 N. W. 273; Platt v. Newberg, 104 Or. 148, 205 Pac. 296; Lee v. City of Dallas, Tex. Civ. App., 267 S. W. 1014; Willis v. City of San Antonio, Tex. Civ. App., 267 S. W. 763; Engle v. Mayor and City Council of Cumberland, 180 Md. 465, 25 A. (2d) 446.

Since no restrictions are imposed upon the legislature by the Constitution of Montana in the matter, it is well settled that the legislature had the power to limit the liability of municipalities as to defective streets and even to wholly exempt them from any liability for injuries resulting from such defects. Empowered as it is to deny to individuals a right of action against municipalities for injuries resulting from defective streets, the legislature has authority to impose such other conditions thereon as it chooses to prescribe. 7 McQuillin, Municipal Corporations, 2nd Ed., sec. 2906, p. 30; Neuenschwander v. Washington Suburban Sanitary Commission, 187 Md. 67, 48 A. (2d) 593, 598; Schigley v. Waseca, supra; Noonan v. City of Portland, 161 Or. 213, 88 Pac. (2d) 808.

By a valid positive statutory enactment the 1937 legislature has prescribed, as a condition precedent to municipal liability for injuries resulting from defects or obstructions in the streets caused and existing by reason of the acts or omissions of third persons as is here pleaded, that the municipality first have actual

notice of such defect or obstruction. Chapter 122, Laws of 1937.

Plaintiff, with commendable frankness, concedes that his pleading fails to meet the foregoing requirement and condition precedent. At page 5 of his initial brief on this appeal he says: "As stated above, the complaint contains no allegation that the defendant city had any *actual* notice or knowledge of said open, unprotected and unguarded excavation at the time of the accident to plaintiff, and it is the absence of an allegation of actual notice that the lower court concluded that the complaint was insufficient." The absence of the allegation was fatal to the pleading. The failure to make such essential allegations can be raised either by demurrer or answer. Engle v. Mayor and City Council of Cumberland, supra, and the authorities cited in 25 A. (2d) at page 448. Compare: Forsyth v. Saginaw, supra, and Gregorius v. City of Corning, supra.

Maring v. City of Billings, 115 Mont. 249, 142 Pac. (2d) 361, decided in 1943, was an action to recover damages for personal injuries alleged to have been sustained by a pedestrian in falling into an excavation made and left by one Burt, a plumber, in the parking strip between the curb and the sidewalk in one of the city's streets. There as here the trial court sustained the city's general demurrer to plaintiff's pleading and caused judgment for the city to be entered, from which plaintiff appealed. There the plaintiff, Maude K. Maring, in her complaint alleged: That after alighting from an automobile stopped upon an unimproved street in the city of Billings, she proceeded to walk from the street, then in a muddy condition, toward the sidewalk, stepping upon some boards or planks lying in the parking strip between the street curbing and the sidewalk in front of a new dwelling then under construction; that as she stepped upon them, the boards slipped, causing her to fall into the excavation, some six feet in depth, which the plumber Burt had dug and covered with loose boards pending inspection of his work in installing the water pipes for the new dwelling then being built under permit issued by the city's building inspector, and that plaintiff's in-

juries, for which she sought to recover damages, resulted from said fall.

In the Maring Case, supra, Mr. Justice Albert Anderson, speaking for the court, said: "The error specified is the sustaining of the demurrer and the entry of judgment for the defendant. The sole question presented is whether the complaint states a cause of action.

"* * * The whole argument has been upon the question of responsibility for the condition of danger in the street and whether the city was involved to the extent that it is liable for the damage. In that aspect of the case the decision would rest on the question of notice and knowledge of the condition by the city, for it is its duty to keep the streets and all public ways in reasonably safe condition for travel.

"The rule is that for any dangerous condition of the streets brought about by the city itself it is responsible, and for any such condition brought about other than by acts done by the city itself the city's responsibility arises upon notice thereof, and for injury resulting to anyone therefrom it is liable only if it 'had actual notice of such defect or obstruction and reasonable opportunity to repair such defect or remove such obstruction before such injury or damage was received.' It is so provided by Chapter 122, Laws of 1937, amending section 5080 of the Revised Codes of 1935.''

Mr. Chief Justice Johnson, in his specially concurring opinion in the Maring Case, supra, said the complaint was fatally defective in failing to meet the actual notice requirement of Chapter 122, Laws of 1937, and wrote: "* * * Unless we first find that the case meets the requirements of the statute we do not reach the question of negligence. * * * The provision * * * constitutes an enactment that unless actual notice, not constructive or substituted notice, is had, the city shall not be liable. * * * since, with the circumstances alleged, the city did not cause the excavation, and since it had no actual notice thereof prior to the accident, the statute made the city immune from suit for damages regardless of whether in other respects actionable negli-

gence was alleged. Whether or not we agree with the declared legislative policy of municipal immunity is of course not material.''

The writer dissented in the Maring Case, urging, on the aspect of the case involving notice to the city, that actual notice of the existence of the defect is not required where the city had issued a permit or order or otherwise authorized another to enter upon and tear up a public street for his private use. This view of the law was never accepted by the court. On the contrary, a majority of the court held the mandate of the statute, Chapter 122, Laws of 1937, to be that unless *actual notice* is first had of the obstruction the city shall not be liable. The pronouncement so made by the majority of the court was published and, generally speaking, should thereafter be controlling upon the bench and bar as well as upon the municipal officers and public generally.

A court must decide in one way or another each case brought before it, and it must decide it according to some general rule, which is the quality that distinguishes law from individual caprice. When after due consideration, a court has laid down a rule of law, it will ordinarily follow such rule in succeeding cases sufficiently similar in their facts to appear clearly to involve the same principle. Thus does the rule once laid down in a decided case became a precedent for future decisions, thereby achieving some degree of certainty in the law. A known rule is far preferable to treating each new case as a new problem to be decided as may appear ''just'' to the particular judge or judges then presiding, independently of all that has preceded it. Different men's ideas differ so about abstract justice that, without a more definite guide than what each may consider ''just,'' one could seldom be certain what legal consequences would flow from any course of conduct.

Failing to convince at least two of his associates of the correctness of his interpretation of the principles that should govern the Maring Case, in the consideration of subsequent cases the writer accepted as the law of the land, the construction pro-

nounced by the majority by which the appeal in the Maring Case was determined.

In the more recent case of Lazich v. City of Butte, supra [116 Mont. 386, 154 Pac. (2d) 261], decided in 1944, 'and involving the application of Chapter 122, Laws of 1937, this court said: "It will be noted that the statute provides that the city must have actual notice and a 'reasonable opportunity to repair such defect or remove such obstruction,' before any liability for damages shall attach. * * * It is not shown that the city had any 'actual notice' of the lumber being upon the sidewalk. Hence it could have had no 'reasonable opportunity' to have the lumber removed. However, to meet this situation the plaintiff predicates her action upon the theory that when the city issued the permit to the contractor who did the remodeling work, the city thereby constituted the contractor the city's agent and 'actual knowledge' of the contractor was actual knowledge of the city.

"We cannot subscribe to any such theory. * * * In issuing a building permit to the contractor * * * the city of Butte was merely complying with the regulatory provisions of the ordinance. * * * In none of the authorities do we find where one holding a permit or a license issued by a municipality is classified as an agent of the municipality by reason of holding its permit or license. * * *

"Even though we should find the contractor to be the agent of the city yet the plaintiff could still not prevail. The crux of this lawsuit is notice. The statute is unequivocal in its terms. It provides but one kind of notice and that is actual notice. *The most that could be said on the granting of the permit* or the alleged agency of the contractor *would be that it gave the city constructive notice. That is not sufficient."* Emphasis supplied.

In Andrews v. City of Butte, 116 Mont. 69, 147 Pac. (2d) 1020, decided in 1944, this court said: "Plaintiff brought this suit against the city of Butte, alleging in his amended complaint that he fell on a broken sidewalk within the city and suffered injuries by reason of the fall. In his amended complaint he sets

out that the city of Butte *had actual knowledge of the dangerous condition* of the defective sidewalk. \* \* \* Upon the trial he offered proof that he had talked with Frank Curran, the city engineer, concerning the condition of the sidewalk in question, and that Curran *had actual notice of the defect some weeks before the accident.* \* \* \*

"The only question, then, before this court for determination is the proper interpretation of section 5080, Revised Codes of 1935, as amended by Chapter 122 of the Session Laws of 1937. That amendment provides that before any city or town shall be liable for damages to person or to property suffered by reason of any defective sidewalks, 'it must first be shown that said city or town had actual notice of such defect or obstruction and reasonable opportunity to repair such defect or remove such obstruction before such injury or damage was received \* \* \*.

"*The primary purpose of the statute is to assure that actual notice is to be given the city.* How that actual notice is to be given was not specified. The question in every case such as this revolves around that question of the *actual notice* to the city through its officials and that *actual notice* may be proven by any method through competent evidence." Emphasis supplied.

In Sprague v. City of Rochester, 159 N. Y. 20, 53 N. E. 697, 699, it is said: "The object of the statute in requiring notice to the city authorities of a defect in a sidewalk, as a prerequisite to a right of action to recover damages for an injury caused thereby, is to give the city a reasonable time to repair the defect and prevent any injury therefrom. *It is to protect the city from liability for imputed negligence, or negligence that is implied by law from the lapse of time and the failure to discover the defect.* \* \* \* the provision in question is not designed to protect the city against stale claims \* \* \* but *to protect it against any claim* based on neglect to repair *until the city has had actual notice and a reasonable opportunity to repair.*" Emphasis supplied.

The words "actual notice" employed in the statute signify something more than an opportunity to obtain notice by the exercise of due care and diligence. By the amendment requiring

actual notice the legislature manifestly designed to prescribe a more definite requirement respecting notice and to impose a more rigorous limitation upon the traveler's right to recover for an injury received. Hurley v. Inhabitants of Bowdoinham, 88 Me. 293, 34 A. 72, 74.

Here as in the Maring Case, supra, and in the Lazich Case, supra, the city did not cause the offending obstruction. Under such facts and the construction heretofore given Chapter 122, Laws of 1937, by this court, before the city shall be liable in damages on account of any injury received by reason of such obstruction, it must first be shown that the city "had actual notice of such defect or obstruction and reasonable opportunity to repair such defect or remove such obstruction before such injury or damage was received." Chapter 122, Laws of 1937. This court so held for the city of Billings in the Maring Case—for the city of Butte in the Lazich case and it should so hold for the city of Great Falls in the instant case.

There has been no change in the law since 1937. The same Act of the legislature that rendered the cities of Billings and Butte immune from liability for damages affords like protection and immunity here for the city of Great Falls.

The majority opinion so construes the statute as to make the actual notice requirement apply only to such defects or obstructions as arise and are created without notice, knowledge, "or permission of the city," thereby adding and inserting the last quoted words in the statute, but such enactment as heretofore construed by this court does not render constructive notice, such as comes to the city merely from the issuance by it of a building or excavating permit, the substitute for, nor the equivalent of, the actual notice required by the express terms of the statute. Lazich v. City of Butte, supra.

In construing the enactment our duty "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted." Sec. 10519, R. C. M. 1935. "* * * our duty is not to enact, but to expound, the law; not to legislate, but to construe

legislation, to apply the law as we find it, and to maintain its integrity as it has been written by a co-ordinate branch of the state government.'' Cooke v. Holland Furnace Co., 200 Mich. 192, 166 N. W. 1013, 1014, L. R. A. 1918E, 552, quoted with approval in Chemielewska v. Butte & Superior Min. Co., 81 Mont. 36, 42, 261 Pac. 616, and in Clark v. Olson, 96 Mont. 417, 432, 31 Pac. (2d) 283.

The cases from other jurisdictions cited and relied upon in the majority opinion could have been persuasive authority prior to 1937. Then constructive notice of a defect or obstruction was deemed sufficient to render a municipality liable, but upon the amending of our law by the enactment of Chapter 122, Laws of 1937, requiring actual notice to the city, rather than constructive notice, such decisions ceased to have any application whatever to the situation here presented.

The former decisions of this court interpreting the 1937 amendment to section 5080, R. C. M. 1935, call for the application of the doctrine of stare decisis which is grounded on public policy and which ''has for its object the salutary effect of uniformity, certainty, and stability in the law. * * * It finds its support in the sound principal that when courts have announced, for the guidance and government of individuals and the public, certain controlling principles of law or have given a construction to statutes upon which individuals and the public have relied in making contracts, they ought not, after these principles have been promulgated and after these constructions have been published, to withdraw or overrule them, thereby disturbing contract rights that have been entered into and property rights that have been acquired upon the faith and credit that the principle announced or the construction adopted in the opinion was the law of the land. * * * Parties should not be encouraged to seek reexamination of determined principles and to speculate on a fluctuation of the law with every change in the expounders of it.'' 14 Am. Jur., ''Courts,'' pages 283, 284, 285, secs. 60, 61.

In sustaining the demurrer to plaintiff's amended complaint and ordering judgment for the defendant city, the learned trial

judge gave effect to the provisions of Chapter 122, Laws of 1937, as applied and interpreted by this court in the Maring and Lazich Cases. In the absence of actual notice to it that the private persons causing and in charge of the excavation had failed to protect it by placing any warning signs, lanterns or barricades thereat, the city, by statute is rendered immune from liability for the injuries occasioned and, in my opinion, the judgment should be affirmed.

MR. JUSTICE METCALF concurs in the foregoing dissent.

Rehearing denied January 18, 1950.