SWANN, Judge.
The plaintiff, City of Miami, appeals from a final judgment for the defendant, Florida Power & Light Company.
The City’s complaint asserts that the defendant is indebted to it for amounts of money allegedly owed for the years 1960 through 1963, inclusive, pursuant to the electric franchise granted by the City to the Company. The City contended that the defendant, in computing the amount of the annual payment under the franchise, improperly deducted the amounts it had paid to the City for contracting licenses and street excavation permits in each of the contested years. The defendant contended that the deductions were proper under the franchise and neither party disputed the amount of money involved.
*345 The portion of the franchise in question provides as follows:
******
“Section 6. That on each July 1 during this grant, the Grantee, its successors and assigns, shall pay to the Grantor and its successors an amount which added to the amount of all taxes, licenses, and other impositions (except amounts for assessments for special benefits, such as sidewalks, street paving and similar improvements) levied or imposed by the Grantor upon the Grantee’s electric property, business, or operations, and those of Grantee’s electric subsidiaries for the preceding calendar year, will equal 6% of Grantee’s revenues from the sale of electrical energy to residential and commercial customers within the corporate limits of the Grantor for the twelve (12) fiscal months preceding the applicable anniversary date; however, the July 1, 1954, payment shall be based upon residential and commercial revenues for the twelve (12) fiscal months preceding the effective date of this grant. Nothing herein shall be construed to be a limitation on the assessment and collection of valid taxes, licenses and other impositions by the Grantor on and from the Grantee in excess of such 6% amount.”
*
The trial court stated that the sole question before it “is whether the amounts Florida Power & Light Company paid the City of Miami for contracting licenses and street excavation permits for each of the years in question, come within the language ‘taxes, licenses and other impositions’ as used in Section 6 of the franchise”. It is from the final judgment holding that such payments were properly deducted by the power company that the City appeals.
The City has presented as error eight different points. We have considered them all and believe that the first seven, assuming that they reflect error, constitute at the most harmless or invited error. Section 54.23, Florida Statutes, F.S.A., provides :
“Harmless error; effect. — No judgment shall be set aside or reversed, or new trial granted by any court of the state in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed.”
The important question to be resolved was whether the trial court correctly ruled that excavation permits and contracting licenses obtained by the Company from the City are “taxes, licenses and other impositions levied or imposed by the Grantor (City) upon the Grantee’s (Defendant) electric property, business or operation.”
The opinion and final judgment of the trial court which we adopt, recited in part as follows:
***** *
“The words ‘other impositions’ refer back to ‘taxes and licenses’, the words immediately preceding. Taxes and licenses, then, are ‘impositions’. Section 6 also specifically excepts ‘assessments for special benefits’^ and such assessments are also ‘impositions’.
“The Court notes that ‘imposition’ has been broadly defined by Courts in other jurisdictions. See, Singer Manufacturing Co. v. Heppenheimer (1896) 58 N.J.Law 633, 34 A. 1061 [32 L.R.A. 643] (‘The word ‘imposition’ includes every kind of enforced contribution to the public treasury’) ; [President, etc. of] Harvard College v. [Board of] Aldermen of [City of] Boston (1870) 104 Mass. 470, 482.
*346 “In Florida and elsewhere, the Courts have frequently treated 'permit’ and ‘license’ interchangeably. See, State ex rel. Biscayne Kennel Club, Inc., v. Stein (1930) 130 Fla. 517, 178 So. 133; Bateman v. City of Winter Park (1948) 160 Fla. 906, 37 So.2d 362. See also the following opinions dealing with street excavation and building permits. Ledbetter v. City of Great Falls (1949) 123 Mont. 270, 213 P.2d 246 [13 A.L.R.2d 903]; Lanham v. Forney (1938) 196 Wash. 62, 81 P.2d 777; Mulder v. City of Los Angeles (1930) 110 Cal.App. 663, 294 P. 485.
“ ‘Other impositions’ as used in Section 6 refers to enforced payments to the City of Miami, similar in nature to taxes, licenses and assessments for special benefits. The language of Section 6 contemplates that all such payments will be allowed as a partial credit in computing the amount of the annual franchise payment with the specific exception of assessments for special benefits which will not be allowed as a partial credit.
“Payments for contracting licenses and street excavation permits do not fall within the specific exception dealing with assessments for special benefits and clearly do come within the meaning of ‘taxes, licenses and other impositions’ as used in Section 6 of the franchise. Such payments were properly deducted by Florida Power & Light Company in computing the annual franchise payments it made to the City of Miami in 1960, 1961, 1962 and 1963.”
* * * * * *
The City requests us to overrule this opinion on the authority of Mileage Realty Co. v. Miami Parking Garage, Inc., Fla. App.1962, 146 So.2d 403, inasmuch as it contends that the defendant did not deduct these items from the payments made to the City from 1954 until 1960, and only deducted the items in question from 1960 to 1963, inclusive.
In Mileage Realty Co., supra, the appellant was required to pay as a “further rental” under its lease fifty percent of the “net profits” received and derived from the operation of any and all business conducted on the premises, to be computed according to a formula in a paragraph entitled “Net Profits”. It submitted accounting reports for four years, in which it deducted property taxes and yearly ground rent in computing net profit, and therefore showed a net loss and did not make any payments for “further rental”. The lessee (appellee) accepted the reports without objection to their validity or correctness. The court said:
# i}i * * *
“In Orlando Orange Groves Co. v. Hale, 119 Fla. 159, 161 So. 284, 295, the Supreme Court of Florida said:
“ ‘This court is committed to the doctrine that where the terms of a written contract are in any respect uncertain or doubtful and the parties thereto have by their conduct placed a construction upon the contract which is reasonable, such construction will be adopted by the court upon the principle that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the principles of correct legal interpretation of the terms of the contract.’
“See also Reinhardt v. Reinhardt, Fla.App.1961, 131 So.2d 509, 513; Sawyer v. Hime, Fla.App.1959, 109 So.2d 193, 194; Lalow v. Codomo, Fla.1958, 101 So.2d 390, 393; Bennett v. Williams, 149 Fla. 4, 5 So.2d 51. We hold that the chancellor erred in failing to apply this rule of practical construction to> the case at bar. While it is true that the formula contained in paragraph two of the lqease does not specifically refer to the deduction of ground rent and *347 taxes in computing net profits, the tenor of the lease agreement, when read as a whole, does not exclude such deductions although it does exclude certain specified items. This coupled with the fact that the appellee failed to object to the annual accounting reports which on their face clearly showed the questioned deductions, leads us to conclude that the parties by their conduct placed a construction upon the lease which was not shown to be unreasonable or wholly at variance with the principles of correct legal interpretation of the terms of the lease.3 Any •other construction, we feel, might, un- der the circumstances of this case, ultimately result in an unwarranted and unjust loss of the security deposit.” (Footnote omitted)
í{í j{í >¡í j{i ¥
That case is distinguishable from "the case at bar in several respects. First, it involved the questions of the proper deductions of ground rents and taxes in arriving at “net profit”. The lease was not specific in regard to the propriety of this ■deduction as is shown by the opinion quoted above. In the case, sub judice, the question before the court was the propriety of the ■deductions of “contractors licenses and street excavation permits” from the fran■chise tax “as taxes, licenses, or other impositions”. This clause in the franchise •ordinance is specific and is not uncertain or •doubtful as was the question of proper deduction in computing “net profits” under the lease.
Secondly, the construction which the City would have us place upon the franchise •ordinance comes within the exception stated in Mileage Realty Co., supra, in that such a construction here would be “wholly at variance with the principles of correct legal interpretation of the terms of the lease (franchise)”.
The judgment is therefore
Affirmed.